ZENITH RADIO CORPORATION, Plaintiff,

v.

UNITED STATES, Defendant.

Court No. 80-5-00861.

United States Court of International Trade.

Feb. 27, 1981.

Frederick L. Ikenson, Washington, D. C., and Philip J. Curtis, Chicago, Ill., for plaintiff.

Thomas S. Martin, Acting Asst. Atty. Gen., Washington, D. C. (David M. Cohen, Director, Commercial Litigation Branch, Washington, D. C., on the briefs), for defendant.

*On Plaintiff's Motion for Partial Summary Judgment and Defendant's Cross-Motion for Summary Judgment*

MALETZ, Judge:

Plaintiff, a domestic manufacturer of television sets, brought this action challenging as unlawful certain settlement agreements into which the United States had entered on April 28, 1980 with various importers of television sets from Japan. As a first cause of action, the complaint alleges that the settlement was not authorized by statute. Alternatively, as a second cause of action, the complaint alleges that even assuming the existence of statutory authority for the settlement, the Government officials who recommended and determined that the claims should be settled acted arbitrarily, capriciously, in bad faith and unlawfully. It is undisputed that by virtue of 28 U.S.C. § 1581(i)—which was provided for by the Customs Courts Act of 1980 (94 Stat. 1727) —this court has jurisdiction to entertain the action.

Plaintiff has moved for partial summary judgment on its first cause of action and defendant has cross-moved for summary judgment on the entire case.[1]

The background facts are as follows: On March 10, 1971, the Secretary of the Treasury issued a finding of dumping of television sets from Japan, thereby making such sets subject to antidumping duties.[2] T.D. 71–76, 36 Fed.Reg. 4597 (1971). From the date of this finding through 1979, most of these duties were not collected. On March

---

1. Plaintiff's motion for partial summary judgment was originally filed as a cross-motion to defendant's motion to dismiss for lack of jurisdiction, and defendant's cross-motion for summary judgment was originally filed as a cross-cross-motion. Since defendant's motion to dismiss was rendered moot by the passage of the Customs Courts Act of 1980, the present motions are referred to as "plaintiff's motion for partial summary judgment" and "defendant's cross-motion for summary judgment."

2. The Secretary of the Treasury's dumping finding was made pursuant to section 201(a) of the Antidumping Act of 1921, as amended (19 U.S.C. § 160(a)), an enactment which was repealed by the Trade Agreements Act of 1979, Pub.L. No. 96–39, Title I, § 106(a), 93 Stat. 193. However, pursuant to section 106(a) of the Trade Agreements Act of 1979, this dumping finding remained in effect.

28, 1980, the Secretary of Commerce[3] announced an administrative review of the dumping finding (45 Fed.Reg. 20511), as required by section 751 of the Tariff Act of 1930, as added by the Trade Agreements Act of 1979 (19 U.S.C. § 1675).[4] On April 28, 1980, prior to the completion of this administrative review, the Secretary of Commerce settled all claims for antidumping duties arising from entries of the sets from July 1, 1973 to March 31, 1979. Plaintiff then filed this action challenging the lawfulness of this settlement.

■ Against this background, we consider plaintiff's motion for partial summary judgment on its first cause of action.[5] Specifically, plaintiff contends that the settlement is not authorized by section 617 of the Tariff Act of 1930, as amended (19 U.S.C. § 1617) and is therefore *ultra vires*, illegal and void. Section 617 reads as follows:

Upon a report by a customs officer, United States attorney, or any special attorney, having charge of *any claim arising under the customs laws*, showing the facts upon which such claim is based, the probabilities of a recovery and the terms upon which the same may be compromised, the Secretary of the Treasury is authorized to compromise such claim, if such action shall be recommended by the General Counsel for the Department of the Treasury. [Emphasis added.][6]

According to plaintiff, section 617 only authorizes the settlement of *liquidated claims* for antidumping duties.[7] In this connection, plaintiff observes—correctly—

that the legislative history of section 617 is essentially silent. However, in support of its position that section 617 authorizes only the settlement of liquidated claims for duties, plaintiff relies heavily upon the history of Rev.Stat. § 3469 which was repealed in 1978. See 92 Stat. 2679.

Rev.Stat. § 3469 at the time relevant here read as follows:

Upon a report by a district attorney, or any special attorney or agent having charge of *any claim in favor of the United States*, showing in detail the condition of such claim, and the terms upon which the same may be compromised, and recommending that it be compromised upon the terms so offered, and upon the recommendation of the solicitor of the treasury, the Secretary of the Treasury is authorized to compromise such claim accordingly. * * * [Emphasis added.]

Based on the similarity of language between the two provisions, plaintiff argues that section 3469 was the precursor of section 617 and therefore that the case law and administrative construction of section 3469 apply for the most part to section 617.

As for case law, plaintiff relies on *United States v. George*, 25 F.Cas. 1277 (C.C.S.D.N.Y.1869) which, it says, supports its position that section 617 authorizes only the settlement of liquidated claims. In *George*, certain informers claimed entitlement to a portion of sums that were paid to the Government under a compromise agreement. The informers contended that the sums consti-

---

3. The Secretary of the Treasury's responsibility *to administer* antidumping matters has been transferred to the Secretary of Commerce by Reorg. Plan No. 3 of 1979, § 5(a)(1)(C), 44 Fed.Reg. 69273 (1979).

4. Section 751 requires the Secretary to conduct a periodic review and determination of antidumping duties.

5. Previously, this court concluded "that plaintiff has made out a substantial case on the merits on its alternative second cause of action * * *" and issued a preliminary injunction restraining the implementation of the settlement agreement. *Zenith Radio Corporation v. United States*, 505 F.Supp. 216, p. 219 (Dec. 9, 1980). The court's memorandum and order

specifically noted, however, that the decision to issue the preliminary injunction was made "without reference to plaintiff's first cause of action * * *." *Ibid.*

6. The Secretary of the Treasury's functions under section 617 have been transferred to the Secretary of Commerce, insofar as those functions relate to the settlement of claims for antidumping duties. Reorg. Plan No. 3 of 1979, *supra*, § 5(a)(1)(G).

7. Liquidation is the final computation of duties accruing on an entry. See 19 C.F.R. § 159.1. Most of the entries which are the subject of the disputed settlement are unliquidated.

tuted fines or penalties in which they had a right to share. The Government on the other hand argued that since the funds were paid by way of compromise under section 10 of the Act of March 3, 1863, 12 Stat. 740—which was a virtually identical predecessor provision to section 3469—such funds were duties and that the informers therefore were not entitled to a share thereof. The court rejected the Government's argument and held (1) that the compromise had no legal effect on the character of the funds and (2) that a portion of the funds constituted fines or penalties in which the informers were entitled to share. Plaintiff emphasizes that the court in *George* added that section 10 "might well be held to confer no power in regard to claims not in suit." 25 F.Cas. at 1279. But this statement was simply dictum which can scarcely be regarded as dispositive of the issue here.

As for administrative construction, plaintiff relies upon various opinions of the Attorney General construing section 10 and its successor section 3469 in which the Attorney General concluded that those provisions were enacted for the benefit of the United States revenue and (1) did not permit the Secretary of the Treasury to exercise indirectly powers which Congress specifically conferred on other agencies; (2) did not authorize the settlement of claims for real property; (3) did not permit hardship to the debtor to be taken into consideration by the Secretary; and (4) did not include the Comptroller of the Treasury as an "agent." However, these opinions of the Attorney General have no relevance here.

Equally without merit is plaintiff's assertion in its opening brief that the legislative history of section 3469 shows that that section only authorized the settlement of claims for uncollected judgments. The fact of the matter is that section 3469 is not so limited as plaintiff itself concedes in its reply brief.

Nor is there any legislative history indicating that Congress intended that section 617 be construed in light of the history of section 3469. Section 617 was originally enacted in 1922 (42 Stat. 987) and provided specifically for the settlement of claims arising under the customs laws. Significantly, when section 617 was adopted, section 3469 was neither repealed nor modified and thus continued to provide authority for the settlement of claims other than those arising under the customs laws.

The important point is that the language of section 617 differs in several significant respects from the language of section 3469. For example, section 617 is applicable to "any claim arising under the customs laws," whereas section 3469 pertains to "any claim in favor of the United States." Thus the inescapable conclusion is that in enacting section 617, Congress intended to provide a mechanism for the settlement of claims arising under the customs laws which would be different from the mechanism provided by section 3469. This consideration militates against construing section 617 in accordance with the history of section 3469. For "[w]here * * * words of a later statute differ from those of a previous one on the same or a related subject, the legislature must have intended them to have a different meaning." *Klein v. Republic Steel Corp.*, 435 F.2d 762, 765–766 (3d Cir. 1970). See also, e. g., *United States v. Crocker-Anglo National Bank*, 277 F.Supp. 133, 155 (N.D.Cal.1967); *Sol Kahaner & Bro. v. United States*, 71 Cust.Ct. 97, 102, C.D. 4480, 372 F.Supp. 1393, 1398 (1973), *aff'd*, 62 CCPA 35, C.A.D. 1141, 509 F.2d 1186 (1975).

What is more, the language of section 617 is clear and the court is therefore dutybound to interpret the section in accordance with its plain meaning. See, e. g., *Trans Alaska Pipeline Rate Cases*, 436 U.S. 631, 643, 98 S.Ct. 2053, 2061, 56 L.Ed.2d 591 (1978). It is quite true that statutory clarity does not bar a court's consideration of legislative history. See, e. g., *Train v. Colorado Pub. Int. Research Group*, 426 U.S. 1, 10, 96 S.Ct. 1938, 1942, 48 L.Ed.2d 434 (1976); *Hunt v. Nuclear Regulatory Commission*, 611 F.2d 332, 336 (10th Cir. 1979), *cert. denied*, 445 U.S. 906, 100 S.Ct. 1084, 63 L.Ed.2d 322 (1980). Nonetheless, the plain language of a statute must prevail in the

absence of legislative history clearly indicating that the Congressional intent differed from that manifested by the language used. See *United States v. Oregon*, 366 U.S. 643, 648, 81 S.Ct. 1278, 1280, 6 L.Ed.2d 575 (1961), *reh. denied*, 368 U.S. 870, 82 S.Ct. 24, 7 L.Ed.2d 70 (1961); *United States v. United States Steel Corp.*, 482 F.2d 439, 444 (7th Cir. 1973), *cert. denied*, 414 U.S. 909, 94 S.Ct. 229, 38 L.Ed.2d 147 (1973). Measured by this standard, absent here is any legislative history indicating that Congress intended section 617 to be given a meaning other than one based on its plain language.

Regarding the plain language, plaintiff argues that the word "claim" as used in section 617 means only claims for liquidated duties, i. e., claims for a sum certain. However, it is axiomatic that a claim by the United States for the appropriate duties arises upon the entry of a shipment of merchandise into the customs territory of the United States. Indeed, imported merchandise may not be released to an importer unless estimated duties or a bond for duties is deposited at the time of entry. 19 U.S.C. § 1505.

It is true that the amount of the claim for duties may be uncertain until liquidation occurs. Nevertheless, the claim for duties exists and an importer obtains possession of goods which he imports subject to the claim of the United States.

Here, the importers of television sets covered by the dumping finding obtained the goods but only subject to the claim of the United States for the duties to be ultimately assessed upon liquidation. Thus, the United States possessed a claim against the importers even though the exact amount of the claim had not been fixed through the process of liquidation.[8]

Alternatively, plaintiff argues that if section 617 is construed as authorizing the settlement of claims prior to the completion of the administrative review required by section 751 of the Tariff Act of 1930, as added by the Trade Agreements Act of 1979 (19 U.S.C. § 1675), Congress' purpose in passing the Trade Agreements Act, i. e., the speedy and efficient collection of antidumping duties, would be frustrated. While plaintiff cites no portion of the Trade Agreements Act or its legislative history explicitly stating that it was Congress' intent to limit the scope of section 617, it argues that the passage of that Act impliedly limited the scope of that section.

This court should of course construe section 617 so as to give effect to the section as a whole. *Weinberger v. Hynson, Westcott & Dunning*, 412 U.S. 609, 633, 93 S.Ct. 2469, 2485, 37 L.Ed.2d 207 (1973); *Certified Color Mfrs. Ass'n v. Mathews*, 543 F.2d 284, 296 (D.C.Cir.1976). Moreover, it is presumed that in enacting section 751 Congress was aware of its prior enactment of section 617. See, e. g., *Cannon v. University of Chicago*, 441 U.S. 677, 696–697, 99 S.Ct. 1946, 1957, 60 L.Ed.2d 560 (1979); *In re Vinarsky*, 287 F.Supp. 446, 449 (N.D.N.Y.1968). And it is also presumed that Congress intended both statutes to be interpreted as fully effective. See, e. g., *Morton v. Mancari*, 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974).

Obviously, these presumptions are not irrebuttable. Nevertheless, repeal of a statute by implication is not favored. *FAA Administrator v. Robertson*, 422 U.S. 255, 265, 95 S.Ct. 2140, 2147, 45 L.Ed.2d 164 (1975). Further, this court should avoid an interpretation of section 617 rendering it only partially effective. *Certified Color Mfrs. Ass'n v. Mathews, supra*, 543 F.2d at 296. Thus sections 617 and 751 are each to be regarded as effective unless there is clear indication that Congress intended otherwise. *FAA Administrator v. Robertson*,

---

**8.** In its ordinary meaning, the word "claim" is a broad comprehensive word including within its scope "a calling * * * for something due." *Webster's Third New International Dictionary of the English Language* (1968). A "claim" has been defined for purposes of the Federal Rules of Civil Procedure as "the aggregate of operative facts which give rise to a right enforceable in the courts." *Original Ballet Russe v. Ballet Theatre*, 133 F.2d 187, 189 (2d Cir. 1943). The fact that the exact amount of the claim is not fixed until liquidation is irrelevant to the question of whether a "claim" exists prior to that date.

*supra*, 422 U.S. at 266, 95 S.Ct. at 2147. Section 751 should therefore not be read to create an implied exception to, or limitation of, section 617 in the absence of a demonstrated repugnancy between the two provisions. *Morton v. Mancari, supra*, 417 U.S. at 551, 94 S.Ct. at 2483.

No such repugnancy exists here since the two provisions reflect different Congressional concerns and apply to different functions of the Secretary. The purpose of section 617 is to provide the Secretary with the authority to settle claims for duties and to outline the procedures to be followed and the factors to be weighed in the course of determining whether a given claim for duties should be settled.

The purpose of section 751 is entirely different.[9] That section provides in part that where there has been a finding of dumping, the Secretary shall review and determine the amount of antidumping duty to be assessed by determining the difference between the foreign market value and United States price of the imported merchandise. Upon the request of an interested party, the Secretary must hold a hearing regarding his review and determination of antidumping duties. These procedures are designed to facilitate the speedy assessment of antidumping duties and to provide designated parties a greater role in these determinations. See H.R.Rep. No. 96–317, 96th Cong., 1st Sess. 72 (1979); S.Rep. No. 96–249, 96th Cong., 1st Sess. 80–81 (1979), U.S. Code Cong. & Admin.News 1979, p. 381. It is to be added that these determinations are subject to judicial review under section 516A of the Tariff Act of 1930, as amended (19 U.S.C. § 1516a).

There is no conflict between the procedures required by section 751 and those required by section 617. Under section 617 before the Secretary may settle a claim, he must receive a report from the Government official having charge of the claim showing "the facts upon which [the] claim is based, the probabilities of a recovery and the terms upon which the [claim] may be compromised * * *." Upon receipt of this report, and upon the recommendation of the General Counsel of the Department of Commerce that the claim be compromised, the Secretary may settle the claim. Any person adversely affected by the decision to settle may then seek judicial review of the Secretary's action. Considering that judicial review is thus available and that settlement may expedite the collection of antidumping duties, these procedures do not frustrate the Congressional purpose underlying section 751.

In sum, section 617 and section 751 are separate and distinct statutes. Nothing in

---

**9.** The relevant portions of section 751 (19 U.S.C. § 1675) read as follows:

(a) *Periodic review of amount of duty.*—
(1) *In general.*—At least once during each 12-month period beginning on the anniversary of the date of publication * * * an antidumping duty order under this title or a finding under the Antidumping Act, 1921, * * * the administering authority [i. e., the Secretary of Commerce], after publication of notice of such review in the Federal Register, shall—

\* \* \* \* \* \*

(B) review, and determine (in accordance with paragraph (2)), the amount of any antidumping duty, * * *

\* \* \* \* \* \*

and shall publish the results of such review, together with notice of any * * * estimated duty to be deposited * * * in the Federal Register.
(2) *Determination of antidumping duties.*—For the purpose of paragraph (1)(B), the administering authority shall determine—

(A) the foreign market value and United States price of each entry of merchandise subject to the antidumping duty order and included within that determination, and
(B) the amount, if any, by which the foreign market value of each such entry exceeds the United States price of the entry.
The administering authority, without revealing confidential information, shall publish notice of the results of the determination of antidumping duties in the Federal Register, and that determination shall be the basis for the assessment of antidumping duties on entries of the merchandise included within the determination and for deposits of estimated duties.

\* \* \* \* \* \*

(d) *Hearings.*—Whenever the administering authority or the Commission conducts a review under this section it shall, upon the request of any interested party, hold a hearing in accordance with section 774(b) in connection with that review.

the terms or the legislative history of section 751 in any way refers or relates to, much less derogates from, the Secretary's authority under section 617. Clearly, had Congress intended that the authority contained in section 617 be modified in any way by the Trade Agreements Act of 1979, it would have so stated. Given these facts, the court cannot agree with plaintiff's contention to the effect that Congress impliedly limited the scope of section 617 when it enacted section 751 into law.

In view of the foregoing, plaintiff's motion for partial summary judgment on its first cause of action is denied; defendant's cross-motion for summary judgment is granted as to plaintiff's first cause of action and denied without prejudice as to plaintiff's second cause of action for the reasons stated in this court's memorandum and order of December 9, 1980. See note 5, *supra*.