**COMMITTEE TO PRESERVE AMERICAN COLOR TELEVISION (a.k.a. Compact) and Imports Committee, Tube Division, Electronic Industries Association, Plaintiffs,**

v.

**UNITED STATES, Defendant.**

**Court No. 81-3-00258.**

United States Court of International Trade.

Nov. 15, 1982.

Collier, Shannon, Rill & Scott, Washington, D.C. (Paul D. Cullen, Paul C. Rosenthal and Robert L. Meuser, Washington, D.C., on the briefs), for plaintiffs.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C. (David M. Cohen, Washington, D.C., Director, Commercial Litigation Branch, on the briefs), for defendant.

1. Pursuant to rule 15(a) of the rules of this court, plaintiffs' motion for leave to amend their complaint is hereby granted since, in the court's view, the interests of justice so require. See *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

*Opinion and Order*

MALETZ, Judge:

This matter is before the court on plaintiffs' motion to obtain a preliminary injunction to restrain the Government from implementing the terms of settlement agreements entered into on April 28, 1980 between the Secretary of Commerce and various importers of television receivers manufactured in Japan and subject to an antidumping duty finding, T.D. 71–76.[1] The Secretary was authorized to enter into these agreements by section 617 of the Tariff Act of 1930, 19 U.S.C. § 1617 (1976), which provides:

> Upon a report by a customs officer, United States attorney, or any special attorney, having charge of any claim arising under the customs laws, showing the facts upon which such claim is based, the probabilities of recovery and the terms upon which the same may be compromised, the Secretary of the Treasury is authorized to compromise such claim, if such action shall be recommended by the General Counsel for the Department of the Treasury.[2]

Essentially, plaintiffs claim in their amended complaint that the Government violated the procedural requirements of section 617. For the reasons that follow, the court concludes that there is little, if any, likelihood that plaintiffs will prevail on the merits of this contention and, accordingly, their motion for a preliminary injunction is denied.

*Background*

On May 8, 1980 the Zenith Radio Corporation (Zenith) instituted an action in this court challenging the validity of the settlement agreements here in issue on two grounds. *Zenith Radio Corporation v. Unit-*

2. Responsibility for administration of the antidumping laws, including the authority to compromise claims, was transferred to the Secretary of Commerce by Reorg. Plan No. 3 of 1979, 44 Fed.Reg. 69273.

*ed States,* No. 80–5–00861. The *Zenith* complaint alleged that the agreements were unlawful because the Secretary lacked the authority to enter into such agreements or, alternatively, if he had the proper authority, he acted in bad faith in entering into them. On December 9, 1980, this court issued a preliminary injunction on the basis of Zenith's allegations of bad faith. *Zenith Radio Corporation v. United States,* 1 CIT 53, 505 F.Supp. 216.

On March 9, 1981, plaintiffs instituted the present action. Their complaint is in all material respects identical to the complaint filed in *Zenith.* On November 18, 1981, this court granted the Government's motion for partial summary judgment on plaintiffs' first cause of action which also alleged that the Secretary lacked the authority to enter into the settlement agreements. *COMPACT v. United States,* 2 CIT ——, 527 F.Supp. 341.[3]

On March 11, 1982, the Court of Customs and Patent Appeals (CCPA) issued an opinion in an appeal arising out of a discovery dispute in *Zenith. Montgomery Ward & Co., Inc. v. Zenith Radio Corporation,* 673 F.2d 1254 (1982), *cert. denied sub nom. Zenith Radio Corporation v. United States,* —— U.S. ——, 103 S.Ct. 256, 74 L.Ed.2d 200 (1982). The CCPA held in *Montgomery Ward* that the exercise of the Secretary's compromise authority under 19 U.S.C. § 1617 was a matter committed by law to agency discretion. *Id.* at 1262, 1263. The CCPA further held that any legal wrong to Zenith under 19 U.S.C. § 1617 could only be based on a violation of the procedures set forth in that section. *Id.* Accordingly, the substance, merits or motives for entering into the settlement agreements were held to be outside the scope of judicial review. *Id.* Hence, the *Zenith* case was remanded to this court with directions to dismiss for lack of jurisdiction. *Id.* at 1265.

Following the denial of Zenith's petition for a writ of certiorari, plaintiffs filed the present motions for leave to amend their complaint and for a preliminary injunction.

*Opinion*

**I**

The factors utilized in considering a request for a preliminary injunction are set out in the leading case of *Virginia Petroleum Jobbers Ass'n v. FPC,* 259 F.2d 921, 925 (D.C.Cir.1958). There the court held that in order to prevail the petitioner must show (1) that there is a substantial likelihood that the petitioner will prevail on the merits; (2) that without the relief requested the petitioner will be irreparably injured; (3) that the issuance of the relief requested will not substantially harm other interested parties; and (4) that the public interest would be served by the relief requested. In amplifying its earlier decision in *Virginia Petroleum,* the District of Columbia Circuit Court of Appeals noted in *Washington Metropolitan Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841 (1977), that substantial likelihood of success on the merits is not required to be established with mathematical probability. *Id.* at 843. *See also, e.g., S.J. Stile Associates, Ltd. v. Snyder,* 646 F.2d 522 (CCPA 1981). Since the court concludes here that there is little, if any, likelihood that plaintiffs will succeed on the merits of their amended complaint, consideration of the other three factors is unnecessary.

**II**

■ Plaintiffs' amended complaint is comprised of five counts. Count I is in all material respects identical to the first cause of action in their original complaint which alleged that the Secretary lacked authority under section 617 to enter into the settlement agreements. In *Montgomery Ward,* however, that issue was decided adversely to this contention. Count II alleges that no report as called for in section 617 was prepared. Count III alleges procedural irregularities in connection with the recommendation of the General Counsel of the Department of Commerce to the Secretary. Count IV alleges a failure on the part of the

---

**3.** The same disposition was previously made on Zenith's first cause of action. *Zenith Radio*

*Corporation v. United States,* 1 CIT 180, 509 F.Supp. 1282 (1981).

Secretary to consider the report and recommendation. Finally, Count V alleges bad faith compliance with the section 617 procedures. Since *Montgomery Ward* is stare decisis with respect to the issue in Count I, the court will limit its consideration to the allegations contained in Counts II through V of plaintiffs' amended complaint.

### A

In Count II plaintiffs challenge the sufficiency of the purported section 617 report in three respects. First, plaintiffs assert, *a* report is to be submitted to the Secretary of Commerce which contains (1) the facts upon which the claim is based, (2) the probabilities of recovery, and (3) the terms upon which the claim may be compromised. No single, sufficiently detailed, comprehensive report was submitted, plaintiffs contend. Second, plaintiffs argue that no report was submitted by "a customs officer, United States attorney, or any special attorney, having charge of any claim." Finally, plaintiffs contend that claims cannot be treated on a class-wide basis in a section 617 report, but rather such reports can only focus on the claims against individual importers.

The court disagrees with each of plaintiffs' three contentions. First, *a* report does exist which was prepared by a customs officer and which contains all three section 617 criteria, that being the memorandum dated February 19, 1980 of Robert E. Chasen, the Commissioner of Customs. That memorandum relates the following: (1) the background facts of the claims (the imports and parties involved, and the basis for computing antidumping duties); (2) the difficulties encountered in attempting to collect the antidumping duties and the weaknesses of the Government's case; and (3) a recommendation to settle the cases in the range of $50 million to $100 million.

A second report which satisfies the procedural requirements of section 617 is the memorandum of Homer E. Moyer, Jr., General Counsel of the Department of Commerce, dated April 28, 1980, addressed to the Secretary. The court does not see any fair grounds for disputing that his memorandum meets all three criteria of a section 617 report. The only real dispute is whether his memorandum can serve a dual purpose, namely, that of being both a section 617 report and the recommendation of the General Counsel.

Plaintiffs argue that it cannot, that section 617 requires the participation of three distinct individuals. However, there is nothing in section 617 proscribing this dual-purpose use of the General Counsel's memorandum. Taken to its logical extreme, plaintiffs' argument leads to the incongruous result that although one of Mr. Moyer's subordinates could serve as a section 617 "special attorney," and could prepare a section 617 report under the supervision of Mr. Moyer, Mr. Moyer himself could not do so. "No rule of construction necessitates ... acceptance of an interpretation resulting in patently absurd consequences." *United States v. Brown,* 333 U.S. 18, 27, 68 S.Ct. 376, 380, 92 L.Ed. 442 (1948). *Accord United States v. Bryan,* 339 U.S. 323, 338, 70 S.Ct. 724, 734, 94 L.Ed. 884 (1950).

Regarding plaintiffs' second contention that no report was prepared by "a customs officer, United States attorney, or special attorney, having charge of any claim", Mr. Chasen, in his capacity as the Commissioner of Customs, was *the* customs officer who had charge of these claims. The fact that responsibility for the administration of the antidumping laws was transferred from the Treasury to the Commerce Department does not derogate from the role of the Customs Service under section 617. For under the Trade Agreements Act of 1979 the Customs Service still classifies and ultimately liquidates entries of merchandise subject to an antidumping duty order.

■ Finally, class-wide treatment of the antidumping duty claims, rather than the individual importer approach which plaintiffs propose, was permissible.[4] All of the

---

**4.** The term "any claim" in section 617 clearly may include one or more claims. 1 U.S.C. § 1 provides:

In determining the meaning of any Act of Congress, unless the context indicates otherwise—

claims settled in this case were the subject of the same antidumping duty finding, T.D. 71–76. All of the claims involved across-the-board application of the Japanese Commodity Tax to determine foreign market value and other uniform adjustments to that foreign market value. Thus, the "claim" involved here for purposes of section 617 involved the total claim for dumping duties imposed during the relevant period upon the importation of television receivers subject to T.D. 71–76 and the application of the various uniform principles developed by the Government in the course of imposing the duties upon those importations. The common threads running through these claims which made them suitable for group treatment in the antidumping duty proceeding are no less relevant in the context of a section 617 report. Indeed, these common fact elements, particularly the use of the Japanese Commodity Tax, are the very factors which led the officials who prepared section 617 reports to conclude that the Government's chances for recovery were seriously impaired. Comprehensive treatment of all the claims in one report was thus appropriate.

Plaintiffs' attack on the sufficiency of Mr. Chasen's memorandum as to its detail and specificity goes to the substance of that memorandum. This line of inquiry is foreclosed by *Montgomery Ward. Id.* at 1262.

Lastly, on the question of whether a section 617 report was prepared, the court considers relevant the various letters and memoranda prepared by high ranking Government officials responsible for the administration of the customs laws.[5] All these letters and memoranda addressed at least some, if not all, of the three section 617 criteria. Some incorporate by reference the other letters and memoranda, the former supplementing the latter. Collectively those various letters and memoranda meet

the requirements of a section 617 report. All these documents discuss at least some of the facts which gave rise to the claims. Most of the documents discuss the difficulties that the United States would encounter in defending the validity of the principles which it applied in imposing the antidumping duties. Finally, some of the documents contain the views of the authors as to the terms of an acceptable settlement. What is clear is that these letters and memoranda collectively meet the requirements of section 617.

In the last analysis, a literal reading of a statute should be avoided when doing so results in violence to or a subversion of the congressional purpose for the particular statutory scheme. Discovering and then carrying out that purpose is the paramount duty of every court faced with the task of interpreting a statute. For "it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir.), *aff'd*, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945).

Plaintiffs' argument that a single report must be prepared ignores the ultimate purpose of a section 617 report, namely, to ensure that the Secretary of Commerce makes an informed decision when contemplating a settlement. The court fails to see how the Secretary could have been better informed than in a situation where he is presented with reports from appointed officials within high echelons of the Government. Given this consideration, the various letters and memoranda prepared in contemplation of a section 617 settlement, either severally or collectively, satisfy the procedural requirements of section 617.

---

words importing the singular include and apply to several persons, parties, or things; . . .

**5.** These individuals were Commissioner of Customs Chasen; Lynn J. Barden, Assistant General Counsel for Import Administration; General

Counsel Moyer; David M. Cohen, Director, Commercial Litigation Branch, Department of Justice; John Greenwald, Deputy Assistant Secretary for Import Administration; and Leonard Shambon, Designate-Director, Office of Compliance, U.S. Department of Commerce.

In sum, the court sees little, if any, likelihood of plaintiffs prevailing on the merits of Count II of their amended complaint.

## B

In Count III of their amended complaint plaintiffs allege certain irregularities in the General Counsel's settlement recommendation to the Secretary. Plaintiffs do not contest that a section 617 recommendation was in fact prepared by the General Counsel. Rather, plaintiffs invite the court to review the contents of the General Counsel's memorandum which they maintain are materially defective and inaccurate, particularly as to the figure representing estimated antidumping duties.

This is an invitation which the court must decline, for plaintiffs' attack clearly goes to the merits and substance of the General Counsel's recommendation. The CCPA in *Montgomery Ward* instructed that judicial inquiry must cease once it is determined that the General Counsel recommended settlement to the Secretary. As the court stated, 673 F.2d at 1263–64:

> [I]n *Morgan IV* [*Morgan v. United States,* 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941)] the Court clearly rejected the argument that probing into reasoning or motivation was appropriate as part of a procedural inquiry.
> These same principles must be applied in this case. At most, Zenith may press inquiry into whether the statutory procedural requirements for settlement were satisfied .... Proving that the estimate in the report to him [the Secretary] was lower than what Zenith considers reasonable does not destroy the lawfulness of his decision.

For this reason, the court concludes that there is little, if any, likelihood of success on the merits of Count III of plaintiffs' amended complaint.

## C

We next turn to Count IV of plaintiffs' amended complaint. The thrust of that count is that the Secretary's decision to settle was not based on the section 617 report or the General Counsel's recommendation. It is uncontested, however, that all of the reports prepared in this case were done so in advance of the Secretary's settlement announcement of April 28, 1980. Moreover, it appears from the record that the General Counsel's recommendation, which referred to and incorporated those reports, was prepared and presented to the Secretary prior to his settlement announcement. With these facts the strong presumption of administrative regularity must apply here. *Hercules, Inc. v. EPA,* 598 F.2d 91, 123 (D.C.Cir.1978). Allegations of impropriety or irregularity are highly speculative at best.

Further, the CCPA cautioned in *Montgomery Ward* that it is not "the function of the court to probe the mental processes of the Secretary." *Id.* at 1263 (quoting from the Supreme Court's *Morgan IV* opinion). Probing into reasoning or motivation is inappropriate as part of a procedural inquiry. *Id.* Thus, plaintiffs "may not ... inquire into the Secretary's mental processes in deciding upon settlement in the guise of a challenge to procedure." *Id.* at 1264. But this is in effect what plaintiffs seek to do.

It appears, therefore, extremely unlikely that plaintiffs will succeed on the merits of Count IV of their amended complaint.

## D

Finally, we consider Count V of plaintiffs' amended complaint. There, plaintiffs allege bad faith compliance with the procedures of section 617. An examination of that count reveals in essence an attack on the motives for the settlement agreement. As previously noted, inquiry into such motives are beyond this court's jurisdiction. *Montgomery Ward,* 673 F.2d at 1262–63. Success on the merits of Count V is, accordingly, highly unlikely.

### Conclusion

Having concluded that there is little, if any, likelihood of success on the merits of plaintiffs' amended complaint, plaintiffs' motion for a preliminary injunction is denied.