706 F.2d 1574
 4 ITRD 1850, 1 Fed. Cir. (T) 53
 COMMITTEE TO PRESERVE AMERICAN COLOR TELEVISION (A.K.A.
COMPACT) and The Imports Committee, Tube Division,
Electronic Industries Association, Appellants,
v.
The UNITED STATES, Appellee.
 Appeal No. 83-578.
 United States Court of Appeals,
Federal Circuit.
 May 2, 1983.
 
 Paul D. Cullen, Washington, D.C., argued for appellant. With him on the brief were Robert L. Meuser, and Jeanne M. Forch, Washington, D.C.
 David M. Cohen, Washington, D.C., argued for appellee. With him on the brief was J. Paul McGrath, Asst. Atty. Gen., Washington, D.C.
 Barton C. Green, Washington, D.C., was on the brief for amicus curiae American Iron and Steel Institute.
 Frederick L. Ikenson, Washington, D.C., was on the brief for amicus curiae Zenith Radio Corp. Philip J. Curtis, Glenview, Ill., of counsel.
 Before MARKEY, Chief Judge, and DAVIS, NICHOLS, BALDWIN, and NIES, Circuit Judges.
 NIES, Circuit Judge.
 
 
 1
 This appeal is from the grant of summary judgment by the Court of International Trade (trial court) in favor of the Government on all counts of the amended complaint of appellants, Committee to Preserve American Color Television and The Imports Committee, Tube Division, Electronic Industries Association (COMPACT), to the extent that the complaint raised justiciable issues. Appellants seek to set aside settlement agreements concerning dumping duties on entries of certain television receivers imported from Japan. The jurisdiction of this court is founded on 28 U.S.C. Sec. 1295(a)(5). Having considered each of the matters asserted by COMPACT as error in the decision of the Court of International Trade, as well as the arguments of the amici curiae, we affirm.
 
 
 2
 * Background
 
 
 3
 On April 28, 1980, the Government announced that the Secretary of Commerce had reached agreement with importers of Japanese television receivers to compromise claims for dumping duty assessments arising under T.D. 71-76, 5 Cust.Bull. 151 (1971), on receivers entered between March 1972 and March 31, 1979, and on that date executed settlement agreements with a number of the importers.
 
 
 4
 Upon learning of these settlement agreements, one of the amici to this appeal, Zenith Radio Corporation (Zenith), filed suit in the United States Customs Court, now the United States Court of International Trade, seeking to enjoin their implementation. Subsequently, appellants herein, COMPACT, filed a similar complaint containing allegations virtually identical to those made by Zenith. Consolidation of the suits has been opposed by Zenith and COMPACT and the cases have proceeded slightly out of phase with each other.
 
 
 5
 The original complaints asserted that the Secretary of Commerce lacked authority to settle dumping duty claims (first count) and that, even if such power existed, it was being exercised in bad faith (second count). Summary judgment was granted in favor of the Government on count I. Zenith Radio Corp. v. United States, 1 CIT 180, 509 F.Supp. 1282 (1981), and COMPACT v. United States, 2 CIT ---, 527 F.Supp. 341 (1981).
 
 
 6
 In the initial stages of the Zenith case, a dispute arose over discovery relating to information supplied to the Government by a non-party, Montgomery Ward & Co. Inc. (Wards). Wards appealed the court's order which directed the Government to turn over Wards' confidential business records to Zenith. The appeal was heard by the United States Court of Customs and Patent Appeals, one of the predecessors of this court. Montgomery Ward & Co. v. Zenith Radio Corp., 673 F.2d 1254 (Cust. & Pat.App.), reh'g denied, No. 81-24 (CCPA Order entered May 13, 1982), cert. denied sub nom. Zenith Radio Corp. v. United States, --- U.S. ----, 103 S.Ct. 256, 74 L.Ed.2d 200 (1982) (hereinafter "Montgomery Ward ").
 
 
 7
 In Montgomery Ward the court held that the Secretary possessed the requisite authority to settle dumping duty claims under section 617 of the Tariff Act of 1930, as amended, 19 U.S.C. Sec. 1617 (1976) (hereinafter "section 617"). 673 F.2d at 1259-60.
 
 
 8
 The court further held that, in challenging the exercise of that authority, Zenith's complaint was directed to matters outside the permissible scope of judicial review, and that "[a]t most, Zenith may press inquiry into whether the procedural requirements for settlement [set out in section 617] were satisfied." Id. at 1264. It was, thus, ordered that the complaint filed by Zenith be dismissed for lack of jurisdiction. Id. at 1265. Further details regarding the subject settlements appear in Montgomery Ward and will not be recounted here.
 
 II
 
 9
 After the Supreme Court denied certiorari in Montgomery Ward, Zenith and COMPACT were granted leave to amend their complaints. Zenith Radio Corp. v. United States, 3 CIT ---, Slip Op. 82-98, 16 Cust.Bull. and Dec., No. 49, 47 (1982); COMPACT v. United States, 3 CIT ---, 551 F.Supp. 1142, 1143 n. 1 (1982). Both amended complaints urge five grounds for enjoining the subject settlement agreements. Again, the two law suits were not consolidated (Zenith appears here as amicus curiae).
 
 
 10
 The Court of International Trade, relying on Montgomery Ward, denied COMPACT's motion for a preliminary injunction, COMPACT v. United States, 3 CIT ---, 551 F.Supp. 1142 (1982), and consolidated the hearing on the motion with trial on the merits and granted judgment in favor of the Government on all counts. COMPACT v. United States, 3 CIT ---, Slip Op. 82-101, 16 Cust.Bull. and Dec., No. 49, 55 (1982). This appeal followed.
 
 III
 
 11
 * Count I raises anew the challenge to the Secretary's authority to "compromise the assessment of antidumping duties" under section 617. The Court of International Trade held that consideration of that issue was precluded under the doctrine of stare decisis.
 
 
 12
 It is asserted here that the issue of whether the Secretary had settlement authority was neither before the court, nor decided, in Montgomery Ward. COMPACT would construe the Montgomery Ward decision as though the appeals court had merely been "assuming the power to settle existed in the first instance."
 
 
 13
 Contrary to appellants' view, the decision of the court was explicit inasmuch as the resolution of this issue was a necessary predicate to its decision on the jurisdictional question. Arguments on the issue of the Secretary's power were of record and considered prior to the Montgomery Ward decision, were considered again on the petition for rehearing (in which COMPACT participated as amicus curiae), and have been reconsidered in this appeal. We remain unpersuaded that section 617 does not include the power to settle dumping duty claims, or that the Trade Agreements Act of 1979, Pub.L. No. 96-39, 93 Stat. 144 (1979), altered or limited that power.
 
 B
 
 14
 Counts II-IV purport to allege violations of the procedural mandates of section 617. These allegations were considered by the trial court in accordance with the decision in Montgomery Ward.
 
 
 15
 The provisions of section 617 are as follows:
 
 
 16
 Upon a report by a customs officer, district attorney, United States Attorney, or any special attorney, having charge of any claim arising under the customs laws, showing the facts upon which such claim is based, the probabilities of a recovery and the terms upon which the same may be compromised, the Secretary of the Treasury is hereby authorized to compromise such claim, if such action shall be recommended by the General Counsel for the Department of the Treasury.
 
 
 17
 The responsibility for administration of the anti-dumping laws, and specifically all functions of the Secretary of the Treasury and the General Counsel of the Department of the Treasury, were transferred to the Secretary of Commerce by Reorg. Plan No. 3 of 1979, Sec. 5(a)(1)(C), 44 Fed.Reg. 69273, 69275, 93 Stat. 1381 (1979), including specifically, the authority to compromise claims under section 617 (Sec. 5(a)(1)(G)). See 19 U.S.C. Sec. 2171 note (Supp. III 1979).
 
 
 18
 The Court of International Trade carefully reviewed each deficiency asserted by COMPACT and found that the procedures had been satisfied and that certain of the deficiencies asserted were not proper for judicial inquiry. We find no error in the trial court's legal standards and agree with its conclusion on each of these matters.
 
 C
 
 19
 Count II alleges that there was no "report" which satisfies the opening clause of section 617. (Section 617 report.)
 
 
 20
 The administrative record discloses a comprehensive memorandum dated April 28, 1980, from Homer E. Moyer, Jr., the General Counsel of the Department of Commerce to the Secretary (together with a letter of transmittal of the same date recommending settlement) which, COMPACT does not dispute, addresses each of the criteria required in a section 617 report.*
 
 
 21
 COMPACT urges that this report does not satisfy section 617 for the reason that the General Counsel himself is not qualified under the statute to make the report. COMPACT argues that it must be prepared by some "other person." The trial court reasoned that this argument "leads to the incongruous result that although one of Mr. Moyer's subordinates could serve as a section 617 'special attorney,' and could prepare a section 617 report under the supervision of Mr. Moyer, Mr. Moyer himself could not do so." COMPACT v. United States, 3 CIT at ---, 551 F.Supp. at 1145. While procedures set forth in section 617 must be fully adhered to, we agree with the trial judge that "[n]o rule of construction necessitates ... acceptance of an interpretation resulting in patently absurd consequences." Id., and cases cited.
 
 
 22
 COMPACT also argues that the report is defective because it treats all of the claims as a class rather than treating each importer separately. Given the comprehensive class-wide nature of the settlement, we agree with the trial court that class-wide comprehensive treatment of the claims in the report is permissible. Id. at 1145-46.
 
 D
 
 23
 Count III alleges that the General Counsel's recommendation contained "statements and opinions of law and fact that were false, misleading, and not supported by the record upon which the Secretary's decision was required to be based." COMPACT does not seek to set aside the settlement because the recommendation was not made. Rather, the court is asked to review the contents of that recommendation for accuracy and validity. Such an inquiry falls squarely within the proscription of Montgomery Ward, 673 F.2d 1263-64, and the trial court properly refused to undertake the task.
 
 E
 
 24
 Count IV alleges that the decision to settle was made by the Secretary before he received the General Counsel's recommendation. COMPACT further alleges that the "administrative record ... does not reflect whether the Secretary actually received and read the General Counsel's recommendation." Finally, COMPACT asserts that even if received and read, the Secretary had insufficient time to comprehend the facts of a case of this "magnitude and complexity." These contentions must fail.
 
 
 25
 Without question, the Secretary should make a reasoned decision based on all of the required information, see, e.g., Calvert Cliffs Coordinating Committee, Inc. v. AEC, 449 F.2d 1109 (D.C.Cir.1971). However, that only a few hours were available between receipt of the report and execution of settlement agreements raises no presumption that he had not done so. National Nutritional Foods Association v. FDA, 491 F.2d 1141, 1144-45 (2d Cir.1974). Moreover, COMPACT does not, and could not, assert that the report was the Secretary's introduction to the case. Without question he had been monitoring developments closely. The record precludes any inference that the Secretary was uninformed.
 
 
 26
 The Supreme Court has instructed that it would be beyond the proper role of the courts to inquire of the Secretary what weight he gave to the various factors in reaching his decision here, United States v. Morgan, 313 U.S. 409, 421-22, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941) (Morgan IV ), and, in any event, the Secretary is not limited solely to the factors explicated in these reports. Montgomery Ward, 673 F.2d at 1264. The statute requires that settlement be entered into only after the necessary reports are received by the Secretary and that the Secretary make the settlement decision. These requirements are clearly satisfied here.
 
 IV
 
 27
 Count V alleges that the exercise of settlement authority was "undertaken in bad faith and in conscious disregard for the procedures mandated by [section 617]." COMPACT asserts that the General Counsel's recommendation understated the maximum amount of duties the Government might collect absent settlement and, further, that he failed to inform the Secretary that the duties could be higher if domestic producers successfully challenged the methodology used by the Commerce Department in the duty calculations.
 
 
 28
 With respect to possible differences in the figures supplied by the General Counsel, the court in Montgomery Ward held, 673 F.2d at 1264, "[p]roving that the estimate in the report ... was lower than what Zenith considers reasonable does not destroy the lawfulness of [the Secretary's ] decision." (Emphasis added.) The trial court, as it also did with respect to count III, correctly declined COMPACT's invitation to inquire into the General Counsel's motivation.
 
 Conclusion
 
 29
 The judgment of the Court of International Trade is affirmed. The injunction pending appeal is dissolved.
 
 
 30
 AFFIRMED.
 
 
 
 *
 As one of the attachments to that memorandum, the General Counsel included a status report on the subject dumping proceedings, dated February 19, 1980, from the Commissioner of Customs to the Acting Under Secretary of Commerce prepared and sent pursuant to the latter's request. While that status report also addresses the criteria of a section 617 report, COMPACT argues that technically the Commissioner did not have "charge" of the claims which were being settled by the Secretary of Commerce. We do not agree, under the circumstances here, where the Commissioner's report was specifically prepared in response to a request from Commerce for use in connection with settlement of these claims, that the report was not by an officer "having charge."