**ZENITH RADIO CORPORATION, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 80–5–00861.**

United States Court of International Trade.

Dec. 9, 1980.

Frederick L. Ikenson, Washington, D. C., and Philip J. Curtis, Glenview, Ill., on the brief for plaintiff.

Alice Daniel, Asst. Atty. Gen., Washington, D. C. (David M. Cohen, Washington, D. C., Director, Commercial Litigation Branch, on the brief), for defendant.

*Memorandum and Order On Plaintiff's Motion for a Preliminary Injunction*

MALETZ, Judge:

Plaintiff, an American television manufacturer, moves for an order enjoining *pendente lite* the Secretary of Commerce, the Secretary of the Treasury, the Attorney General and the Commissioner of Customs, and their successors, agents and assigns, from implementing the terms of any settlement agreement entered into by or on behalf of the United States Department of Commerce, the United States Department of the Treasury, the United States Department of Justice and/or the United States Customs Service, and various importers of television receivers from Japan subject to the Secretary of the Treasury's finding of dumping, T.D. 71–76 (1971).

By way of background, on May 28, 1980 plaintiff brought an action in this court under section 516A of the Tariff Act of 1930, as amended by the Trade Agreements Act of 1979 (19 U.S.C. § 1516a(a)(2)) challenging certain settlement agreements into which the United States had entered on April 28, 1980 with various importers of television receivers from Japan. The major portion of these settlement agreements related to claims arising out of a large backlog of unliquidated entries.

On June 27, 1980, plaintiff filed a verified complaint in which it detailed its grievances and alleged that the implementation of the settlement agreements would result in the unlawful forgiveness to plaintiff's competitors of hundreds of millions of dollars in antidumping liability on these unliquidated entries. As a first cause of action, the complaint asserted that the settlement was

not authorized by 19 U.S.C. § 1617 and thus was *ultra vires*, illegal and void.

Alternatively, as a second cause of action, the complaint alleged that even assuming 19 U.S.C. § 1617 provided authority for the settlement, the Government officials who recommended and determined that the claims should be settled acted arbitrarily, capriciously, in bad faith and unlawfully. More specifically, the complaint alleged that the recommendations and the decision to settle the claims as well as the terms of the settlement were based on bad faith and improper motivations of persons in the Executive Branch. According to the complaint, the recommendations and decisions to settle, and the terms of the settlement were based primarily on political and other irrelevant considerations.

Following enactment of the Customs Courts Act of 1980, which became effective on November 1, 1980, plaintiff filed an amended complaint in this court on November 3, 1980 under 28 U.S.C. § 1581(c) (a provision which gives the court jurisdiction over actions commenced under section 516A of the Tariff Act of 1930, as amended (19 U.S.C. § 1516a)). Alternatively, the amended complaint was brought under 28 U.S.C. § 1581(i) (a provision which was added by the Customs Courts Act of 1980 to grant broad residual jurisdictional authority to this court). It is undisputed that by virtue of § 1581(i), this court has jurisdiction to entertain this action.

It is important to add by way of further background that on May 8, 1980, the Court of Appeals for the District of Columbia Circuit in *The Committee to Preserve American Television* (a.k.a. *Compact*) v. *Miller*, C.A.D.C. No. 79–1948, issued an injunction pending appeal which is the same in substance as the preliminary injunction sought by plaintiff here. However, the enactment of the Customs Courts Act of 1980 makes imminent the dissolution by the D.C. Circuit of its injunction in view of the exclusivity of subject matter jurisdiction which Congress has now vested in this

court. Indeed, the appellants in the *Compact* case have filed a motion with the D.C. Circuit to transfer that case to this court. The Government, on the other hand, opposes the motion to transfer and urges that the D.C. Circuit dissolve its injunction pending appeal. In this posture the injunction pending appeal could be dissolved by the D.C. Circuit at any time. Given that circumstance, plaintiff's motion in this court for a preliminary injunction is ripe for decision at this time.

Nor is there any question as to the power of this court to issue a preliminary injunction in appropriate circumstances. For the Customs Courts Act of 1980 vests this court—renamed the United States Court of International Trade—with "all the powers in law and equity of, or as conferred by statute upon, a district court of the United States." 28 U.S.C. § 1585. Thus, the Act specifically authorizes the court to issue injunctions. 28 U.S.C. § 2643(c)(1). What is more, Congress intended "to grant the Court of International Trade remedial powers coextensive with those of a federal district court. * * * [Therefore] [w]hen a party requests the court to grant injunctive relief, the court is to be guided by the same factors utilized by a federal district court when it considers a request for a preliminary injunction." H.R.Rep. No. 96–1235, 96th Cong.2d Sess. 61, U.S.Code Cong. & Admin.News 1980, pp. 7088, 7131 (1980).

The factors utilized by district courts in considering a request for a preliminary injunction are set out in the leading case of *Virginia Petroleum Jobbers Association v. F.P.C.*, 259 F.2d 921, 925 (D.C.Cir.1958). There the court indicated that to prevail the petitioner must show (1) that there is a substantial likelihood that the petitioner will prevail on the merits; (2) that without the relief requested the petitioner will be irreparably injured; (3) that the issuance of the relief requested will not substantially harm other interested parties; and (4) that the public interest would be served by the relief requested.[1]

1. See also, e.g., *Asher v. Laird*, 475 F.2d 360, 362 (D.C.Cir.1973); *Di Jub Leasing Corp. v.* *United States*, 1 CIT —, 505 F.Supp. at 1120 1121 (1980).

Recently, the D.C. Circuit in *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C. Cir.1977), amplified these factors as follows:

> * * * [U]nder *Virginia Petroleum Jobbers* a court, when confronted with a case in which the other three factors strongly favor interim relief may exercise its discretion to grant a stay if the movant has made a substantial case on the merits. The court is not required to find that ultimate success by the movant is a mathematical probability, and indeed, as in this case, may grant a stay even though its own approach may be contrary to movant's view of the merits. The necessary "level" or "degree" of possibility of success will vary according to the court's assessment of the other factors.

Applying the *Virginia Petroleum/Holiday Tours* test to the present case, we find the following:

### 1. Likelihood that Plaintiff will Prevail on the Merits

The court has examined the record made in the case thus far, including the complaint; defendant's motion to dismiss for lack of jurisdiction and brief in support thereof; plaintiff's cross-motion for partial summary judgment on its first cause of action and its brief in support thereof and in opposition to defendant's motion to dismiss; defendant's cross-cross-motion for summary judgment and brief in support thereof and in opposition to plaintiff's motion for partial summary judgment; the amended complaint; and defendant's reply to plaintiff's opposition to defendant's motion to dismiss.[2] What is particularly significant is that several of the foregoing submissions set forth facts supported by accompanying exhibits with respect to the background of and circumstances surrounding the settlement agreements. Based on these facts which are largely uncontroverted, the court—without reference to plaintiff's first cause of action—is of the view that plaintiff has made out a substantial case on the merits on its alternative second cause of action alleging that Government officials in negotiating and executing the settlement agreements acted arbitrarily and in bad faith.

### 2. Irreparable Injury to Plaintiff

The court is of the opinion that if appropriate Government officials are not enjoined from implementing the settlement agreements, plaintiff stands to be irreparably injured. For one thing, plaintiff will have lost its right to judicial review. For another, the settlement if implemented would result in the allegedly illegal forgiveness of liability for hundreds of millions of dollars in dumping duties to plaintiff's competitors.

Defendant argues though that plaintiff's competitive position is not currently affected in an adverse manner by the importation of television receivers from Japan. Hence, defendant's position is that plaintiff would not be harmed by non-enforcement of the antidumping statutes with respect to past entries. However, Congress clearly recognized that domestic interests could be harmed by inadequate enforcement of the antidumping law with respect to past entries. This is evidenced by the administrative and judicial review made available by sections 751 and 516A of the Tariff Act of 1930, as amended (19 U.S.C. §§ 1675, 1516a), which enable American manufacturers to contest the amount of duty to be assessed on past entries. Even the section 751 annual review which is now being conducted involving television receivers from Japan does not pertain to current entries. Rather, the current investigation relates to the amount of duties to be assessed on entries made between April 1, 1979 and March 1, 1980. In short, Congress recognized that domestic industry could be injured by the failure to enforce the antidumping law adequately and provided a vehicle to assure that domestic interests could participate in administrative and judicial review.

---

**2.** In its reply to plaintiff's opposition to defendant's motion to dismiss, defendant agreed that by virtue of 28 U.S.C. § 1581(i), as amended by the Customs Courts Act of 1980, the court has jurisdiction over the present action. Thus, defendant's motion to dismiss for lack of jurisdiction is now moot.

### 3. The Effect on the Public Interest and on Third Parties

The defendant argues here—as it did in the Court of Appeals for the District of Columbia Circuit—that the enjoining of the settlement agreements would work a hardship on the public interest and third parties. Thus, the defendant states that the settlement agreements at issue were concluded on April 28, 1980 while the injunction pending appeal was not issued by the Court of Appeals until May 8, 1980. During the interim period, defendant states, Government agencies and private parties took a number of steps in reliance upon the agreements. Specifically, the Department of Justice caused the dismissal with prejudice of two collection suits.[3] Also, according to defendant, the Customs Service and the private parties to the agreements took unspecified steps also in reliance upon the agreements.

It is to be noted, however, that the parties to the agreements were obviously concerned that the agreements could come under legal attack. For the agreements contained the following provision:

8. This Agreement shall be null and void in the event that there be, and upon, a judicial decision final by appeal or, if the time to appeal shall have expired without an appeal having been taken, that the United States did not have the right, power or authority to enter into this Agreement. Within ten (10) calendar days after such decision, the United States shall refund the consideration paid by the Company, pursuant to paragraph 2 above. Nevertheless, if, at the time the agreement be finally declared null and void, the entries of television receivers subject to T.D. 71–76 made prior to April 1, 1979, have been liquidated or reliquidated with no assessment of antidumping duties, and such liquidations or reliquidations have become final or conclusive upon all persons, the applicable consideration paid by the Company shall not be refunded.

Defendant proceeds to argue that unless the injunction is discontinued (and plaintiff's case is permitted to become moot), the settlement agreements might be repudiated. Such a development, defendant suggests, could lead to litigation with importers and "the diversion of substantial resources needed for the effective future enforcement of T.D. 71–76 into an effort to defend past actions." "The failure of this latter effort," defendant continues, "would result in the defeat of the very objective which plaintiff seeks to achieve—the payment of dumping duties by the importers of Japanese television sets during a substantial period of time—and the possible impairment of the effort to effectively enforce T.D. 71–76 in the future."

In essence, defendant's position is that the public interest would be best served by mooting the present controversy. But this course, precluding as it would judicial inquiry into the Government's alleged failure to administer the antidumping law with respect to television receivers from Japan, would scarcely be consistent with the public interest. For the public interest lies in the faithful execution by the Executive Branch of the laws enacted by Congress. In this proceeding, plaintiff has raised serious issues concerning the Executive Branch's exercise of its responsibilities under the antidumping law with respect to television receivers from Japan. So considered, the mooting of this controversy, which is what would result in the absence of an injunction, would constitute a disservice to the public interest.

In view of the foregoing, it is hereby

ORDERED that plaintiff's motion for a preliminary injunction is granted; and it is further

ORDERED that the Secretary of Commerce, the Secretary of the Treasury, the Attorney General, and the Commissioner of Customs, and their successors, agents, and assigns are enjoined, pending the resolution of this case, from implementing the terms of any settlement agreement entered into

---

**3.** The dismissal of these two collection suits alone would not warrant the mooting of litigation challenging the legality of the settlement agreements, as apparently the Court of Appeals for the District of Columbia found.

by or on behalf of the United States Department of Commerce, the United States Department of the Treasury, the United States Department of Justice, and/or the United States Customs Service, and various importers of television receivers subject to T.D. 71–76; and it is further

ORDERED that the Secretary of the Treasury and the Commissioner of Customs and their successors, agents, and assigns are enjoined, pending the resolution of this case, from liquidating any entries of television receivers subject to the finding of dumping, T.D. 71–76, which were entered, or withdrawn from warehouse, for consumption on or prior to March 31, 1979.