The STATE OF KANSAS, ex rel., Robert T. STEPHAN, Attorney General and The Metropolitan Government of Nashville and Davidson County, Tennessee, and The State of Minnesota, by its Attorney General Warren Spannaus, Plaintiffs-Appellees,

v.

Brock ADAMS, As Secretary of the Department of Transportation; John M. Sullivan, as Administrator of the Federal Railroad Administration; and the National Railroad Passenger Corporation, Defendants-Appellants.

No. 81–1648.

United States Court of Appeals, Tenth Circuit.

April 18, 1983.

See also, 10th Cir., 608 F.2d 861.

T.L. Green, Sp. Asst. Atty. Gen., State of Kan., Topeka, Kan. (Robert T. Stephan, Atty. Gen. of Kan., Topeka, Kan., and Warren Spannaus, Atty. Gen. of Minn. and Gilbert S. Buffington, Sp. Asst. Atty. Gen., State of Minn., St. Paul, Minn., with him on briefs), and John L. Kennedy, The Metropolitan Government of Nashville and Davidson County, Tenn., Nashville, Tenn., for plaintiffs-appellees.

Roderick C. Dennehy, Jr., Washington, D.C. (Victor D. Ryerson, Washington, D.C., with him on briefs), for defendants-appellants.

Before SETH, Chief Judge, and HOLLOWAY and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is an appeal from an order of the United States District Court for the District of Kansas which denied the motion of the defendants-appellants to impose upon the plaintiffs-appellees expenses incurred growing out of the issuance by the court at their behest of temporary orders which required the defendants to continue certain passenger trains in operation.

The action was filed in the first instance by the plaintiffs-appellees on August 31, 1979. In the action injunctive and declaratory relief was requested. The effort was to prevent the termination of passenger rail service by the National Railroad Passenger Corporation (referred to as Amtrak) on the Lone Star, Floridian, and North Coast Hiawatha trains. The claim of the plaintiffs-appellees was that the report and plan for curtailment of rail service prepared by the Secretary of Transportation was at odds with the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. §§ 4321–61 (1976); the Amtrak Improvement Act of 1978, Pub.L. No. 95–421, 92 Stat. 923 (1978); the guidelines on Environmental Quality, 40 C.F.R. §§ 1500.1–.14 (1978); the National Historic Preservation Act of 1966, 16 U.S.C. §§ 470–470t (1976); the Clean Air Act, 42 U.S.C. §§ 7401–642 (1976); and the Administrative Procedure Act, 5 U.S.C. § 701 et seq. (1976).

On September 28, 1979, the district court issued a temporary restraining order which prohibited defendants from terminating services as contemplated on October 1, 1979. In issuing the TRO the court found that the plaintiffs had raised serious issues concerning the statutes involved; that the plaintiffs would suffer immediate and irreparable harm should service be terminated; that they had established a likelihood of success on the merits of their complaints; and that there was a public interest in maintaining the status quo while these merits were being litigated. No bond was posted in order to secure the TRO. The court relied on our decision in *Continental Oil Co. v. Frontier Refining Co.*, 338 F.2d 780 (10th Cir.1964). It waived bond on the basis that plaintiffs, as governmental entities, were fiscally responsible.

On September 29, 1979, the President signed into law the Amtrak Reorganization Act of 1979, H.R. 3996. That Act ratified the administrative decision to discontinue passenger service on the Lone Star, Floridian and North Coast Hiawatha lines. As a result of this action, the district court, on October 4, 1979, dissolved its TRO.

On appeal to this court the TRO was reinstituted on October 5, 1979. However, on October 8, 1979, the Supreme Court vacated this court's TRO. Subsequently, we held that the district court correctly refused to order a preliminary injunction against Secretary Brock and Amtrak. *Kansas v. Adams,* 608 F.2d 861 (10th Cir.1979), *cert. denied sub nom.,* 445 U.S. 963, 100 S.Ct. 1651, 64 L.Ed.2d 238 (1980).

The defendants now seek to recoup the costs that they incurred in operating trains while the TRO was in effect. The trial court denied these costs on several equitable grounds.

Needless to say, the demands made by the railroads were extremely large. The court's first observation after citing authorities was that only nominal bonds and nominal liabilities for wrongful injunctions are imposed in NEPA cases. The imposition of substantial liability would, according to the court, frustrate the policy of Congress "to encourage actions on environmental grounds."

A further equitable factor cited by the court was that costs incurred during existence of the TRO should be borne by the public, since it was the public that benefited from the TRO. The court reasoned that "[i]mposing the expenses on the federal government would more closely achieve this result than imposing them only upon these three plaintiffs."

The court also observed that the environmental issues and other issues raised in support of plaintiffs' request for a TRO may well have been valid complaints. The injunction was lifted not because these complaints were unfounded, but rather, because Congress ratified the potentially invalid administrative decision to terminate rail service.

The court finally said that a swing of a few votes in Congress "would have ratified the result achieved by the injunction orders of the courts. The plaintiffs' action was [therefore] a reasonable one, based on probable success and the public interest."

*Whether the Ruling of the District Court Should Be Reversed.*

We conclude that the ruling of the district court should be affirmed. We have previously held that where "the applicant opposes a motion for posting of security on the basis of its financial responsibility and does not seek to limit its liability, it may not avoid liability on the ground that a bond was not required." *Monroe Div., Litton Business Systems, Inc. v. De Bari,* 562 F.2d 30, 32 (10th Cir.1977).

▮ We have also held that "[e]quity comes into play in determining whether there may be recovery and the amount thereof." *De Bari, supra,* at 33. *Cf. Russell v. Farley,* 105 U.S. (15 Otto.) 433, 441, 26 L.Ed. 1060 (1881) (before passage of Rule 65, courts were governed by general principles of equity in enforcing bonds). In other words, the decision whether to award damages, and the extent thereof, is in the discretion of the district court and is based upon considerations of equity and justice. *Lawrence v. St. Louis-San Francisco Ry.,* 278 U.S. 228, 49 S.Ct. 106, 73 L.Ed. 282 (1929) (district court may "refuse to allow recovery of any damages [on an injunction bond], even if the permanent injunction should be denied"); *H & R Block, Inc. v. McCaslin,* 541 F.2d 1098, 1099 (5th Cir.1976), *cert. denied,* 430 U.S. 946, 97 S.Ct. 1582, 51 L.Ed.2d 793 (1977) ("[t]he awarding of damages pursuant to an injunction bond rests in the sound discretion of the court's equity jurisdiction"); *Northeast Const. Co. v. Romney,* 485 F.2d 752, 765 & n. 4 (D.C.Cir.1973) (supplemental opinion) (district court can take into account a strong legal argument in deciding whether to assess damages on an injunction bond). In *Page Communications Engineers, Inc. v. Froehlke,* 475 F.2d 994, 997 (D.C.Cir.1973) (per curiam), the D.C. Circuit held that just because a bond is required by Rule 65(c), the district court is not bound to award damages on the bond without considering the equities of the case. Thus it did not make judgment automatic upon a showing that damages were suffered. Rather, a court, in considering the matter of damages, must exercise its equity

power and must effect justice between the parties, avoiding an inequitable result. *Froehlke, supra,* at 997. Rule 65(c) was not intended to negate the court's duty. The court said its conclusion was consistent with the provision of Rule 65 giving the court discretion to fix bond in a nominal amount. The end result is that a defendant who is wrongfully enjoined will not always be made whole by recovery of damages. *Id.*

■ In our judgment the trial court did not abuse its discretion by holding that costs and expenses were not to be awarded. The record discloses that the plaintiffs raised valid environmental concerns. Moreover, the restraining order was vacated not because the concerns on the part of plaintiffs-appellees were unfounded. It was the intervention of Congress that brought about the change.

Our denial of the request of plaintiffs for preliminary injunction was not a decision on the merits against the NEPA claim, *per se.* Our decision recognized that Congress had preempted NEPA in this instance. But our decision was not that the NEPA claim was unfounded. Accordingly, the TRO was not dissolved because it was wrongfully issued, but rather because of an intervening event. In similar instances, several state courts have denied the recovery of damages on an injunction bond. *City of Wichita v. Krauss,* 190 Kan. 635, 378 P.2d 75, 78–79 (Kan.1963); *Mengel Co. v. International Woodworkers,* 220 Miss. 317, 70 So.2d 613, 615 (Miss.1954); *Scott v. Frank,* 121 Iowa 218, 96 N.W. 764, 765 (Iowa 1903) ("[i]f [an injunction] is rightfully awarded, but afterwards properly dissolved because of matters done or arising subsequent to its issuance, there can be *no* recovery of damages."); 42 Am.Jur.2d, Injunctions, § 375 (plaintiff not liable where change in circumstances results in dismissal of injunction).

The judgment of the trial court which denied the costs and expenses to Amtrak is affirmed.