**ZENITH RADIO CORPORATION,**
**Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Court No. 80–5–00861.**

United States Court of
International Trade.

June 29, 1984.

Frederick L. Ikenson, P.C., Washington, D.C. (Frederick L. Ikenson, Washington, D.C., on briefs), for plaintiff.

Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C. (Velta A. Melnbrencis, New York City, on brief), for defendant.

## Opinion and Order

MALETZ, Senior Judge:

Zenith Radio Corporation (Zenith) has filed a motion to compel the government to produce various documents and answer specified interrogatories. The government has responded by filing a cross-motion for a protective order to preclude such discovery on the ground of privilege. For the reasons set out below, each motion is granted in part and denied in part.

### I. Background

In this action, the government, by motion for assessment of damages, seeks recovery on a $250,000 bond posted by Zenith as security for the arguably wrongful issuance of a preliminary injunction it procured in late 1980. *See Zenith Radio Corp. v. United States*, 1 C.I.T. 53, 505 F.Supp. 216 (1980). That injunction—which barred implementation of agreements entered into between the government and various importers of television receivers from Japan that settled an antidumping duty proceeding—was later dissolved by reason of the holding in *Montgomery Ward & Co. v. Zenith Radio Corp.*, 69 CCPA 96, 105, 673 F.2d 1254, 1260, *cert. denied sub nom. Zenith Radio Corp. v. United States*, 459 U.S. 943, 103 S.Ct. 256,

74 L.Ed.2d 200 (1982), that the court lacked jurisdiction. *See also COMPACT v. United States*, 4 C.I.T. 202, 551 F.Supp. 1142 (1982), *aff'd*, 706 F.2d 1574 (Fed.Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 96, 78 L.Ed.2d 102 (1983). The purported damage to the government is lost interest stemming from the delay in its receipt of some $77 million under the settlement agreements.

Zenith has opposed the motion for assessment of damages, alleging that: (1) the government was not damaged by the injunction; (2) even if it had been damaged, its failure to mitigate damages precludes recovery; and (3) principles of law, equity, and fairness bar recovery.

In this setting, Zenith has moved to compel discovery following the government's partial objections to Zenith's (1) request for production of documents and (2) interrogatories. In support of its motion, Zenith maintains that discovery is necessary especially in connection with the defense of failure to mitigate,[1] which relies in large measure on the theory that the government failed to enforce its right to receive interest payments from the importers involved in the settlement for the period when the injunction was in effect.

The government has opposed Zenith's motion and cross-moved for a protective order, asserting that fifteen specified documents—copies of which it has provided to the court for examination *in camera*—as well as certain information requested by the interrogatories, are shielded from discovery by executive privilege, attorney-client privilege, and work product privilege. Zenith counters that these privileges must be deemed waived by virtue of the government's having moved for damages.

### II. Privileges and Waiver

■ Against this background, the issue is this: To what extent does the government's motion for damages constitute a waiver of privileges? According to Zenith, the court should apply the so-called "auto-

---

1. If proven, the government's failure to mitigate could be a complete defense. *See Coyne-Delany* *Co. v. Capital Dev. Bd.*, 717 F.2d 385, 392 (7th Cir.1983).

matic waiver" rule, under which "evidentiary privilege may not be ... used by one invoking the Court's assistance in prosecuting a claim." The government, for its part, points out that the automatic waiver rule has been rejected by many courts and argues that the proper approach is a test "which balances the policies underlying the privileges which are being asserted against the opposing party's need."

### A. The Automatic Waiver Rule

A number of courts have adopted the automatic waiver rule advocated by Zenith, on the theory that when a party seeks judicial relief, he waives whatever privileges he has. The leading case is *Independent Prods. Corp. v. Loew's, Inc.*, 22 F.R.D. 266 (S.D.N.Y.1958), where the court said:

> It would be uneven justice to permit plaintiffs to invoke the powers of this court for the purpose of seeking redress and, at the same time, to permit plaintiffs to fend off questions, the answers to which may constitute a valid defense or materially aid the defense.
>
> Plain justice dictates the view that, regardless of plaintiffs' intention, plaintiffs must be deemed to have waived their assumed privilege by bringing this action.

*Id.* at 276.

The automatic waiver rule has received wide application. *See, e.g., Ghana Supply Comm'n v. New England Power Co.*, 83 F.R.D. 586, 594 (D.Mass.1979) (plaintiff, "by instituting this civil action ..., has waived any privilege it might have otherwise had to prevent disclosure of information sought by NEPCO that is material to NEPCO's defense."); *Anderson v. Nixon*, 444 F.Supp. 1195, 1199 (D.D.C.1978) ("Plaintiff is attempting to use the First Amendment simultaneously as a sword and a shield.... He cannot have it both ways. Plaintiff is not a bystander in the process but a principal. He cannot ask for justice and deny it to those he accuses."); *Federal Deposit Ins. Corp. v. St. Paul Fire & Marine Ins. Co.*, 53 F.R.D. 260, 262 (W.D.

Okla.1971) ("Plaintiff FDIC should be denied governmental privilege as to the reports of FDIC examiners because it instituted this action."); *United States v. Continental Can Co.*, 22 F.R.D. 241, 245 (S.D. N.Y.1958) ("[O]nce the government itself comes into court as a party, even in the performance of a regulatory function, it waives the privilege, if any it had."); *Fleming v. Bernardi*, 1 F.R.D. 624, 625 (N.D. Ohio 1941) ("[W]hen a party seeks relief in a court of law, he must be held to have waived any privilege, which he otherwise might have had, to withhold testimony required by the rules of pleading or evidence as a basis for such relief."). *See generally* 4 J. Moore & J. Lucas, Moore's Federal Practice ¶ 26.60[6] (2d ed. 1983).

The courts that have applied the automatic waiver rule have thus offered litigants a blunt choice: Comply with discovery or face the prospect of default judgment. *See Anderson, supra,* 444 F.Supp. at 1201 ("The Court will not force disclosure of sources. The choice is plaintiff's. If he declines to answer, the Court will entertain a motion ... for default."). *See also Independent Prods., supra,* 22 F.R.D. at 277; *Fleming, supra,* 1 F.R.D. at 626.

### B. The Balancing Test

Withal, adherence to the automatic waiver rule is not unanimous, with some courts favoring—explicitly or implicitly—a balancing approach, in which the need for discovery is weighed against the need for secrecy. *See, e.g., Mitchell v. Roma,* 265 F.2d 633, 637 (3d Cir.1959) ("[W]hile we agree that one instituting a suit is governed by F.R.Civ.P., we cannot subscribe to the suggestion that by instituting such a suit a plaintiff automatically waives any privilege accorded by the Rules...."); *Mertsching v. United States,* 547 F.Supp. 124, 128 (D.Colo.1982), *aff'd per curiam,* 704 F.2d 505 (10th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983) ("Implicit in this reasoning [adopted by the court] is a balancing of the defendant's need for the evidence with the burden on the plaintiff's constitutional rights from

**1446**

disclosure."); *Jones v. B.C. Christopher & Co.,* 466 F.Supp. 213, 223 (D.Kan.1979) ("[I]t is clear one instituting suit does not automatically waive any privilege thereby."). *See generally* 8 C. Wright & A. Miller, Federal Practice and Procedure § 2018, at 145 (1970).

### C. *The Hearn v. Rhay Rule*

In contrast to the automatic waiver rule and the balancing test, a third approach is enunciated in *Hearn v. Rhay,* 68 F.R.D. 574 (E.D.Wash.1975). The court there held that privileges are waived when the following three criteria are met:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*Id.* at 581. The *Hearn* test has been followed by several courts. *See, e.g., Russell v. Curtin Matheson Scientific, Inc.,* 493 F.Supp. 456, 458 (S.D.Tex.1980); *Pitney-Bowes, Inc. v. Mestre,* 86 F.R.D. 444, 447 (S.D.Fla.1980); *United States v. Aronoff,* 466 F.Supp. 855, 863 n. 9 (S.D.N.Y.1979). *See also Sedco Int'l, S.A. v. Cory,* 683 F.2d 1201, 1206 (8th Cir.), *cert. denied,* 459 U.S. 1017, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982).

In the court's view, the *Hearn* test is the better reasoned approach because it avoids the pitfalls of either extreme: (1) the rigidity of the automatic waiver rule, which might permit discovery of items not vital to the movant's defense,[2] and (2) the indeterminacy of the balancing test and the possibility that it may deprive a party of information vital to his defense.

2. The sweeping language of cases advancing the automatic waiver doctrine creates the impression that relevance and need become unimportant. *See Independent Prods., supra,* 22 F.R.D. at 277 ("The Court therefore rules that these plaintiffs have waived whatever privilege they may have had by the bringing of this action.").

### III. *Order*

#### A. *Document Requests*

■ For the foregoing reasons, the court has applied the three-part *Hearn* test in its *in camera* inspection of each of the fifteen documents for which the government claims privilege. This is to say that the court has examined each of these documents in the context of three questions: (1) Did the government's assertion of privilege stem from its affirmative act of moving for damages?; (2) Did the affirmative act place the privileged information at issue by making it relevant?; and (3) Would enforcement of the privilege deny Zenith information vital to its defense?

Applying the *Hearn* test, the court concludes that the government's privileges have been waived as to the documents and portions thereof listed below and therefore orders that the government make available to Zenith within fifteen days a true, accurate and complete copy of each of such documents or portions thereof, which production shall be governed by the protective terms and provisions of the court's order of May 13, 1981, in *Zenith Radio Corp. v. United States,* 1 C.I.T. 289, 291–93.

#### *Schedule A* [3]

*Item 1*

Memorandum dated July 20, 1983 from Alfred R. De Angelus, Deputy Commissioner of Customs, to John M. Walker, Jr., Assistant Secretary of the Treasury (Enforcement and Operations).

*Item 2*

Letter dated July 22, 1983 from John Walker to Lawrence J. Brady, Assistant Secretary of Commerce for Trade Administration.

*Item 3*

3. The government has claimed executive privilege for each of the documents contained in this schedule. With the exception of Item 7, the documents in this schedule apparently were prepared on or before July 29, 1983, at which time the government decided not to seek interest payments from importers for the period when the injunction was in effect.

Memorandum dated July 22, 1983 from John Walker to R.T. McNamar, Deputy Secretary of the Treasury.

*Item 4*

Undated and unsigned draft letter from the Commissioner of Customs to Philip M. Knox, Jr., Vice President and Corporate General Counsel of Sears, Roebuck and Company.

*Item 5* [4]

Memorandum dated July 29, 1983 from Jordan Luke, Assistant General Counsel, Treasury Department (Enforcement and Operations) to John Walker.

*Item 6*

Memorandum and attached covering note dated July 29, 1983 from John Walker to R.T. McNamar.

*Item 7*

Memorandum dated August 2, 1983 from William von Raab, Commissioner of Customs, to Donald T. Regan, Secretary of the Treasury, with the exception of the latter portion of the first paragraph of page 1, following the word "matter."

*Item 8*

Undated and unsigned draft briefing memorandum, authorship not noted.

*Item 9*

Letter dated July 27, 1983 from Irving P. Margulies, Deputy General Counsel of the Department of Commerce, to John Walker.

*Schedule B* [5]

*Item 1*

Memorandum dated August 4, 1983 from David M. Cohen, Director of the Commercial Litigation Branch of the Department of Justice, to Stephen J. Powell, Assistant General Counsel for Import Administration of the Department of Commerce.

*Item 2*

Handwritten notes to the file dated August 11, 1983, prepared by Teresa Polino, General Attorney, United States Customs Service.

*Item 3*

Memorandum dated August 19, 1983 from David Cohen to Stephen Powell.

*Item 4*

Letter dated September 6, 1983 from J. Paul McGrath, Assistant Attorney General, Civil Division, Department of Justice, to Irving Margulies.

*Item 6*

Letter dated September 8, 1983 from Irving Margulies to J. Paul McGrath.

On the basis of the *Hearn* test, the court sustains the government's claim of work product privilege as to Item 5 of Schedule B, a memorandum dated September 6, 1983 from Charles L. Schlumberger, an attorney in the Commercial Litigation Branch of the Department of Justice, to David Cohen.

**B.  *Interrogatories***

The government also has claimed evidentiary privileges as to certain interrogatories propounded by Zenith. More particularly, Zenith has moved to compel a full response to interrogatory 30(c), which inquired about intra-governmental communications regarding the accrual of interest under the settlement agreements. The government objects to subsection (c) of this interrogatory, which asked for "[t]he substance of the communication[s] (who said what and to whom)," and asserts claims of privilege in regard to meetings held on July 12, July 22, and July 29, 1983.[6] For the reasons set forth in the court's consideration of Zenith's document requests, and in accordance with the *Hearn* criteria, it is ordered that the government shall provide

---

**4.** In addition to executive privilege, the government has claimed attorney-client privilege for this document.

**5.** The government has claimed work product privilege for each of the documents contained in this schedule. In addition, it has claimed attorney-client privilege for Items 1, 3, 4, and 6,

and executive privilege for Item 1. The documents in this schedule were all prepared after July 29, 1983.

**6.** Executive privilege was claimed as to all three meetings; also, the attorney-client privilege was claimed as to the latter two meetings.

a complete response to interrogatory 30(c) within fifteen days.

Zenith has also moved to compel supplemental responses to interrogatories 26, 27, 28, 29, 30, and 35. Interrogatories 26 through 29 inquired into the identities of government officials who participated in consideration or determination of the issue of accrual of interest. Interrogatory 30 asked about contacts in 1983 between government officials and private parties regarding this issue. Interrogatory 35 sought identification of memoranda and other notations regarding meetings and telephone conversations referred to in interrogatory 30, among others.

The government, invoking a generalized claim of privilege, has objected to these interrogatories to the extent that they seek information regarding occurrences subsequent to July 29, 1983, the date it decided not to seek interest payments from importers.[7] For the reasons set forth in the court's consideration of Zenith's document requests, and because occurrences subsequent to July 29, 1983 may refer to prior events, the government is ordered to supplement its responses to interrogatories 26, 27, 28, 29, 30, and 35 by providing Zenith, within fifteen days, with the supplemental information it has requested.

As in the case of the documents contained in Schedules A and B, answers to the interrogatories discussed above shall be governed by the protective terms and provisions of the court's order of May 13, 1981 in *Zenith Radio Corp. v. United States*, 1 C.I.T. 289, 291–93.

---

7. The government further objects to the interrogatories on the ground that they are too broad, vague, burdensome, seek irrelevant information, and are not calculated to lead to discovery of admissible evidence. The court finds these objections unpersuasive.