**ZENITH RADIO CORPORATION, Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

**Court No. 80–5–00861.**

United States Court of International Trade.

Aug. 8, 1986.

Frederick L. Ikenson, P.C. (Frederick L. Ikenson, Washington, D.C., on briefs), for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Michael F. Hertz, Director, Commercial Litigation Branch (Velta A. Melnbrencis, Washington, D.C., on briefs), for defendant.

MALETZ, Senior Judge:

The government moves for assessment of damages on a $250,000 injunction bond posted by Zenith. For the reasons that follow, the motion is denied.

## I. *Background*

On March 10, 1971, the Secretary of the Treasury found that television sets from Japan were being dumped. 36 Fed.Reg. 4597 (1971). Such sets, therefore, became subject to antidumping duties. From 1971 through 1979, however, most of these duties were not collected. On March 28, 1980, the Secretary of Commerce, to whom responsibility for administering the antidumping laws had been transferred, announced an administrative review of the antidumping finding. 45 Fed.Reg. 20,511 (1980); *see* Tariff Act of 1930 § 751, 19 U.S.C. § 1675. Before the administrative review was completed, on April 28, 1980, the Secretary of Commerce settled for $77 million all claims for antidumping duties related to entries of television sets from July 1, 1973 to March 31, 1979. Zenith brought this action to challenge the lawfullness of the settlement agreement.[1] In challenging the settlement, Zenith relied on two theories: (1) the agreement was not authorized by 19 U.S.C. § 1617 and was, therefore, ultra vires; and (2) the government officials who recommended and entered into the settlement acted arbitrarily, capriciously, and in bad faith.

Early in the history of this action, Zenith moved for a preliminary injunction barring government officials from implementing the terms of the settlement agreement. Finding that Zenith had "made out a substantial case on the merits on its second alternative cause of action alleging that Government officials ... acted arbitrarily and in bad faith," *Zenith Radio Corp. v. United States*, 1 CIT 53, 56, 505 F.Supp. 216, 219 (1980), the court granted a preliminary injunction, *id.* at 58, 505 F.Supp. at 220–21.[2] Later, the court granted the government's motion to require Zenith to post security for the injunction under rule 65(c) of this court. Although the government requested that security be set at $11.5 million,[3] the court directed Zenith to post security or a bond in the amount of $250,000 "to indemnify the defendant should it ultimately be determined that the defendant was wrongfully enjoined or restrained by the preliminary injunction issued by this court...." *Zenith Radio Corp. v. United States*, 2 CIT 8, 11, 518 F.Supp. 1347, 1350 (1981).[4]

---

1. For a detailed discussion of the background of this action, see *Zenith Radio Corp. v. United States*, 1 CIT 180, 509 F.Supp. 1282 (1981).

2. In this connection, the court noted that the United States Court of Appeals for the District of Columbia Circuit had issued a substantially identical injunction in a related action. The court further observed that the D.C. Circuit's injunction was certain to be dissolved imminently because of the impact of the Customs Courts Act of 1980, 28 U.S.C. § 1581, which vested in this court exclusive jurisdiction over the type of international trade action brought by Zenith. *Zenith Radio Corp. v. United States*, 1 CIT 53, 54–55, 505 F.Supp. 216, 218 (1980). As matters developed, this court also lacked jurisdiction over Zenith's action. *See Montgomery*

*Ward & Co. v. Zenith Radio Corp.*, 69 CCPA 96, 673 F.2d 1254, *cert. denied*, 459 U.S. 943, 103 S.Ct. 256, 74 L.Ed.2d 200 (1982).

3. The government performed the following calculation to arrive at the figure of $11.5 million: the injunction delayed the government's receipt and use of the $77 million settlement; one year's interest on the figure, at 15% interest, is $11.5 million.

4. The court considered various factors in setting security at $250,000. It found that Zenith's action had the potential of benefiting other United States television manufacturers, 2 CIT at 10, 518 F.Supp. at 1350; that Zenith might advance the public interest in faithful enforcement of the antidumping laws, *id.* at 10–11, 518 F.Supp. at

Subsequently, our appellate court ruled that this court lacked jurisdiction to entertain an action such as Zenith's. *Montgomery Ward & Co. v. Zenith Radio Corp.*, 69 CCPA 96, 673 F.2d 1254, *cert. denied,* 459 U.S. 943, 103 S.Ct. 256, 74 L.Ed.2d 200 (1982). Prior to denial of *certiorari* in *Montgomery Ward,* this court denied the government's motion to dissolve the preliminary injunction, because government implementation of the settlement agreements would moot the controversy and prevent Supreme Court review. *Zenith Radio Corp. v. United States,* 3 CIT 243, 244 (1982).[5] After the Supreme Court denied *certiorari,* however, this court dissolved the preliminary injunction. *Zenith Radio Corp. v. United States,* 4 CIT 201, 4 CIT 202 (1982). The government then moved for assessment of damages on the injunction bond.[6]

## II. *Rule 65(c)*

Rule 65(c) of this court, in language identical to the parallel provision of the Federal Rules of Civil Procedure, provides in part: "No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." The circuits do not agree unanimously on the interpretation of rule 65(c).[7]

### A. *The Page Communications Approach*

The District of Columbia Circuit has taken the position that even where rule 65(c)

requires a bond, this does not mean that the court is required to award damages on the bond if the injunction is dissolved, because the court still must avoid inequitable results. *Page Communications Engineers, Inc. v. Froehlke,* 475 F.2d 994, 997 (D.C.Cir.1973) (per curiam). Similarly, the Tenth Circuit has held that whether to award damages on an injunction bond is a question committed to the discretion of the trial court, which should weigh considerations of equity and justice. *Kansas ex rel. Stephan v. Adams,* 705 F.2d 1267, 1269 (10th Cir.1983). *Accord H & R Block, Inc. v. McCaslin,* 541 F.2d 1098, 1099 (5th Cir. 1976) (per curiam) ("The awarding of damages pursuant to an injunction bond rests in the sound discretion of the court's equity jurisdiction.").

### B. *The Coyne-Delany Approach*

On the other hand, the Seventh Circuit has criticized *Page Communications* and *H & R Block,* holding that when a defendant sustains damages because of a wrongfully issued preliminary injunction, the plaintiff should "normally be required to pay the damages, at least up to the limit of the bond." *Coyne-Delany Co. v. Capital Development Board of Illinois,* 717 F.2d 385, 391 (7th Cir.1983).[8] *Coyne-Delany* was particularly unimpressed with the reliance that *Page Communications* and *H & R Block* placed on *Russell v. Farley,* 15 Otto 433, 441–42, 105 U.S. 433, 441–42, 26 L.Ed. 1060 (1882) (in absence of imperative statute to contrary, court should have pow-

---

1350; and that prohibitive security would undermine the congressional goal that the government's administration of the antidumping laws be subject to judicial review, *id.* at 11, 518 F.Supp. at 1350.

5. The court rejected the government's suggestion that the preliminary injunction should be dissolved and that Zenith should be required to seek an injunction from the court of appeals or the Supreme Court pending filing of a petition for *certiorari,* finding such a procedure wasteful. 3 CIT at 244.

6. Between dissolution of the preliminary injunction and final submissions on the motion for assessment of damages, the parties sparred over

discovery for some time. *See Zenith Radio Corp. v. United States,* 7 CIT 398, 588 F.Supp. 1443 (1984), *rev'd,* 764 F.2d 1577 (Fed.Cir.1985).

7. Because of the identity of language between this court's rule 65(c) and the same rule of the Federal Rules of Civil Procedure, it is particularly helpful to consider precedents from other circuits. *Cf.* U.S.C.I.T. R. 1 ("The court may refer for guidance to the rules of other courts.").

8. In *Coyne-Delany,* as here, the plaintiff was "not a poor person but a substantial corporation." 717 F.2d at 392. Whereas this court required an injunction bond of $250,000, the district court in *Coyne-Delany* required a bond of only $5,000. *Id.* at 390.

er to mitigate terms imposed as condition for injunction, or to relieve from such terms altogether, whenever it appears continuation of terms would be inequitable or oppressive). The Seventh Circuit reasoned that (1) the portion of *Russell* upon which reliance was placed was dictum because in that case the injunction had not been dissolved completely, *Coyne-Delany*, 717 F.2d at 391, and (2) *Russell* was superseded by the adoption of rule 65(c), *id.*[9] In *Page Communications*, however, the D.C. Circuit noted that rule 65(c) did not make judgment on the bond automatic upon a showing of damages, 475 F.2d at 997, and concluded:

> [T]he [district] court in considering the matter of damages was exercising its equity powers, and was bound to effect justice between the parties, avoiding any result that would be inequitable or oppressive for either party. The Rule [65(c)] was not intended to negate the court's duty in this regard. Thus, we hold that the court had discretion to refuse to award damages, in the interest of equity and justice. This conclusion is consistent with the provision of the Rule which gives the court discretion to fix bond in a nominal amount; clearly the Rule does not contemplate that a defendant who is wrongfully enjoined will al-

ways be made whole by recovery of damages.

*Id.*

### C. Contrasting the Approaches

■ The court finds itself in greater agreement with the approach of *Page Communications* than with that of *Coyne-Delany*. The court does not understand rule 65(c) as vitiating *Russell v. Farley* [10] and believes that trial courts must retain a modicum of discretion in assessing damages on injunction bonds. Inasmuch as the rule does not mandate an automatic assessment of damages—even if the wrongfully enjoined defendant sustained legitimate damages—the court must read the rule in a manner that will "secure the just, speedy, and inexpensive determination of every action," U.S.C.I.T. R. 1. *Cf. Manuli Autoadesivi, S.P.A. v. United States*, 9 CIT ——, ——, 602 F.Supp. 96, 98 (1985) (intervention denied because of likelihood of prejudice to original parties, citing rule 1's direction of just, speedy, and inexpensive determinations).

While the court has expressed a preference for the approach of *Page Communications*, the tension between that case and *Coyne-Delany* might not be as great as appears at first blush. It is doubtful that the D.C. Circuit, or other circuits that follow *Page Communications*, would contest *Coyne-Delany*'s assertion that damages

---

**9.** *Coyne-Delany* was willing to accept the possibility of good reasons for not awarding damages on an injunction bond: "objective factors—such as the resources of the parties, the defendant's efforts or lack thereof to mitigate his damages, and the outcome of the underlying suit...." 717 F.2d at 392. The Seventh Circuit also stated that a change in the law after issuance of the preliminary injunction may not always be a good reason for denying damages, "but it is a legitimate consideration, perhaps especially where the prevailing party is a state agency that benefited from a change in the law of its state." *Id.* at 392–93. These factors are discussed further in Part III, *infra*.

A recent student note goes further than *Coyne-Delany*:

> Courts should not be free to deny, in their discretion, the recovery of damages otherwise available under rule 65(c). Courts should deny recovery only when damages are not recoverable under the general law of damages

or under a just interpretation of the conditions of the bond.

Note, *Recovery for Wrongful Interlocutory Injunctions under Rule 65(c)*, 99 Harv.L.Rev. 828, 842–43 (1986). The note reads rule 65(c) as undoing *Russell v. Farley*, *id.* at 843, and rejects *Coyne-Delany*'s list of factors that might lead to denial of recovery of damages, *id.* at 844.

**10.** It is interesting that the Advisory Committee note to the 1946 amendment to Federal Rule of Civil Procedure 65 indicates that the rule prevents the court from requiring, as was possible under *Russell v. Farley*, 15 Otto at 446, 105 U.S. at 446, institution of a new action for recovery on the bond. To this extent, rule 65 overruled *Russell* by enabling the defendant to move for damages on the bond as part of the original action. Nothing in the Advisory Committee notes states, however, that rule 65(c) abrogates *Russell*'s grant of equitable power to decline to assess damages.

normally should be assessed on the bond posted for a wrongfully issued injunction. And *Coyne-Delany* certainly recognizes that there are situations when damages should not be assessed. Thus, the question is one of emphasis: is the presumption that damages will be assessed overwhelming and rebuttable only in rare circumstances (*Coyne-Delany*), or do the court's equitable responsibilities mandate careful examination before assessment of damages (*Page Communications*)? This court finds the latter formulation more palatable but believes that in this case the government is not entitled to an assessment of damages on either construction of rule 65(c).

## III. *Equitable Factors*

■ The reasons for the court's conclusion that the government is not entitled to damages are evident upon an examination of the equitable factors discussed in *Coyne-Delany* and other cases.

### A. *Good Faith*

That an injunction was obtained in good faith is not enough to defeat assessment of damages. If the rule were otherwise, damages would almost never be assessed on an injunction bond, because a party seeking a preliminary injunction must demonstrate four prerequisites:

(1) [a] threat of immediate irreparable harm; (2) that the public interest would be better served by issuing than by denying the injunction; (3) a likelihood of success on the merits; and (4) that the balance of hardship on the parties favored [the party seeking the injunction].

*S.J. Stile Associates v. Snyder*, 68 CCPA 27, 30, 646 F.2d 522, 525 (1981); *accord Zenith Radio Corp. v. United States*, 1 Fed.Cir. 74, 76, 710 F.2d 806, 809 (1983). In light of these stiff requirements, a party acting in bad faith will not often obtain an injunction, unless he was capable of misleading the court on a grand scale. Nevertheless, the good faith of the party who

obtained the injunction is one of the factors the court may consider. *See Coyne-Delany*, 717 F.2d at 392 (court should consider full range of factors, which might include plaintiff's good faith); *Page Communications*, 475 F.2d at 997 ("The good faith of Page cannot be doubted."). Based on its familiarity with the proceedings in this case, the court is entirely satisfied that Zenith acted in good faith when it sought injunctive relief.

### B. *Resources of the Parties*

The relative resources of the parties, *see Coyne-Delany*, 717 F.2d at 392, do not tip the scales strongly in favor of or against assessment of damages. The court takes judicial notice that Zenith is hardly impecunious. But there is probably no party in the world better situated than the government of the United States to absorb the loss of $250,000 without dire consequences.

### C. *Mitigation of Damages*

The court will not consider the factor of mitigation of damages, *see id.* Because the interest lost by the government on the $77 million settlement dwarfed the bond of $250,000, even a high degree of governmental lassitude would not suffice to make failure to mitigate damages significant. If the injunction damaged the government, damages—even if vigorously mitigated—would exceed $250,000. Therefore, the government should not be penalized if it failed to mitigate damages.[11]

### D. *Outcome of the Underlying Suit*

While the outcome of the underlying suit is one of the factors discussed in *Coyne-Delany, see id.*, it has minimal relevance to this action, which was dismissed on jurisdictional grounds. The court will neither speculate nor require a mini-trial on the question of whether Zenith's allegation of bad faith in the $77 million settlement agreement had substantive merit. The court does find, however, that the allega-

---

**11.** Because the court holds on other grounds that the government is not entitled to damages, it does not reach the merits of Zenith's alterna-

tive contentions that the government was not damaged by the injunction or that the government failed to mitigate damages.

tion was not frivolous. To that extent, Zenith's failure to win the underlying suit is not a significant factor in favor of assessment of damages.[12]

### E. *Change in the Law*

The most significant factor in Zenith's favor, and the one upon which the court relies in denying assessment of damages, is the change in the law that took place after the preliminary injunction was issued and thus deprived Zenith of its day in court. That change was the decision by the court of appeals in *Montgomery Ward & Co. v. Zenith Radio Corp.*, 69 CCPA 96, 673 F.2d 1254, *cert. denied*, 459 U.S. 943, 103 S.Ct. 256, 74 L.Ed.2d 200 (1982). *Montgomery Ward* held that neither of the relevant statutes—28 U.S.C. §§ 1581(c) or (i)—conferred jurisdiction on Zenith's claim of bad faith in the antidumping settlement. 69 CCPA at 104–11, 673 F.2d at 1260–65. While *Montgomery Ward* did not change the law in the sense that it overruled a prior precedent, it did decide a novel jurisdictional question in a manner contrary to what Zenith legitimately could have expected.[13]

In *Coyne-Delany*, the Seventh Circuit held that a change in the law might not always be a good ground for denying damages, but that "it is a legitimate consideration, perhaps especially when the prevailing party is a state agency that benefited from a change in the law of its state." 717 F.2d at 392–93. Here, the federal government benefited from a construction of federal law by a federal court of appeals.

A change in the law was the major reason that damages were denied in *Kansas ex rel. Stephan v. Adams*, 705 F.2d 1267 (10th Cir.1983). The court stated:

In our judgment the trial court did not abuse its discretion by holding that costs

and expenses were not to be awarded. The record discloses that the plaintiffs raised valid environmental concerns. Moreover, the restraining order was vacated not because the concerns on the part of plaintiffs-appellees were unfounded. It was the intervention of Congress that brought about the change.

*Id.* at 1270.

Because of the jurisdictional ruling in *Montgomery Ward*, Zenith will never have an opportunity to prove its allegation, which the court has found non-frivolous, that the $77 million settlement was tainted by bad faith. Under all the circumstances, however, it would be manifestly unfair to add a rule 65(c) insult to the jurisdictional injury. The $77 million settlement has never been vindicated on the merits. Rather, this court was held to lack jurisdiction to review the merits of the settlement. If Zenith lost the opportunity to be heard on its good faith claim of governmental impropriety, it should not be required to pay damages to the government as well.

### IV. *Conclusion*

For the foregoing reasons, the government's motion, under rule 65(c) of this court, for assessment of damages on the injunction bond is denied.

---

12. The non-frivolity of Zenith's substantive claim is a factor quite similar to Zenith's good faith, discussed previously. Neither is crucially important, and the court will not give Zenith "double credit" for bringing a good faith action that was not frivolous.

13. In particular, 28 U.S.C. § 1581(i)(2) grants this court exclusive jurisdiction of civil actions commenced against the government that arise out of any law providing for tariffs and duties. On its face, section 1581, which became law during the pendency of this action on October 10, 1980, Pub.L. 96–417, tit. II, § 201, 94 Stat. 1728, 1728–29, seemed to offer Zenith an opportunity to press its claims in this court.