**ZENITH RADIO CORPORATION, Appellee,**

v.

**The UNITED STATES, Appellant.**

**Appeal No. 87–1024.**

United States Court of Appeals, Federal Circuit.

July 2, 1987.

---

Velta A. Melnbrencis, Asst. Director, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for appellant. With her on the brief were Richard K. Willard, Asst. Atty. Gen. and Michael F. Hertz, Director. Also on the brief were Douglas A. Riggs, General Counsel, M. Joan Anderson, Chief Counsel for Intern. Trade, Berniece A. Browne, Sr. Trial Counsel, U.S. Dept. of Commerce, Selig S. Merber, Asst. Gen. Counsel, U.S. Dept. of the Treasury, Michael T. Schmitz, U.S. Customs Service, and Alfonso Robles, Atty.-Adviser, U.S. Customs Service, of counsel.

Frederick L. Ikenson, Washington, D.C., argued for appellee.

Before FRIEDMAN, Circuit Judge, BENNETT, Senior Circuit Judge, and SMITH, Circuit Judge.

FRIEDMAN, Circuit Judge.

This, hopefully, is the last chapter in the lengthy saga of the unsuccessful attempt by the appellee, Zenith Radio Corporation (Zenith), to prevent the government from carrying out agreements settling claims for antidumping duties the government assessed against the importers of Japanese color television sets into the United States. In connection with a preliminary injunction that Zenith obtained, the Court of International Trade required Zenith to post a $250,000 bond. After the Court of Customs and Patent Appeals held that the Court of International Trade had no authority to enter such an injunction, the government moved in the Court of International Trade for the assessment of damages on the injunction bond. That court refused to assess damages, and the government has appealed from that ruling. We affirm.

I

In 1971 the Secretary of the Treasury published T.D. 71–76, a "finding of dumping" that reported the Secretary's determination "that an industry in the United States is being injured by reason of the importation of television receiving sets, monochrome and color, from Japan sold at less than fair value within the meaning of section 201(a) of the Antidumping Act of 1921, as amended [then 19 U.S.C. § 160(a), now § 1673]." 5 Cust.Bull. 151, 152, 36 Fed.Reg. 4597 (1971).

Pursuant to that finding, dumping duties were assessed from 1973 to 1979 upon importers of color television receivers from Japan. In 1980, the Secretary of Commerce (to whom the administration of the antidumping laws had been transferred) entered into agreements with those importers under which the importers agreed to pay the government $77 million in settlement of their liability for the duties.

Zenith then filed suit in the Court of International Trade challenging the settlement agreements and seeking to invalidate them. Zenith argued that (1) the agreements were not authorized by 19 U.S.C. § 1617, which authorizes the Secretary to compromise "claim[s] arising under the customs laws," and, therefore, were *ultra vires,* and (2) the government officials who recommended and entered into the agree-

ments acted arbitrarily, capriciously, and in bad faith. On Zenith's motion, the court entered a preliminary injunction prohibiting the government from implementing the settlement agreements. *Zenith Radio Corp. v. United States*, 1 CIT 53, 505 F.Supp. 216 (1980). The court ruled that Zenith had "made out a substantial case on the merits of the second alternative cause of action alleging that Government officials ... acted arbitrarily and in bad faith." *Id.* at 219.

The government moved to require Zenith to post a bond to indemnify the government for the loss it would suffer if the government ultimately prevailed in the suit, resulting from the delay in the government's receipt and use of the $77 million settlement. The government sought a bond of $11.5 million, equivalent to 15 percent interest on $77 million for one year. Based upon "all the circumstances," the Court of International Trade required Zenith to post a bond of $250,000 "to indemnify the defendant should it ultimately be determined that the defendant was wrongfully enjoined or restrained by the preliminary injunction issued by this court...." *Zenith Radio Corp. v. United States*, 2 CIT 8, 518 F.Supp. 1347, 1350 (1981).

A similar action, based on the same circumstances and arguments, was brought by the Committee to Preserve American Color Television ("COMPACT") in the United States Court of Appeals for the District of Columbia Circuit. That court entered a similar injunction against the government. The COMPACT suit was transferred to the Court of International Trade, and the District of Columbia Circuit dissolved its injunction.

The Court of International Trade granted summary judgment in favor of the government on the "ultra vires" counts in both cases. *Zenith Radio Corp. v. United States*, 1 CIT 180, 509 F.Supp. 1282 (1981); *COMPACT v. United States*, 2 CIT 208, 527 F.Supp. 341 (1981).

In connection with the remaining claim of bad faith, the court ordered the government to respond to Zenith's discovery requests, *Zenith Radio Corp. v. United States*, 1 CIT 59 (1980) [Available on WESTLAW–DCT database], and to file the full administrative record and certain documents not part of that record, *Zenith Radio Corp. v. United States*, 1 CIT 289 (1981) [Available on WESTLAW–DCT database]. The Court of Customs and Patent appeals reversed the latter order and remanded the case to the Court of International Trade with directions to dismiss the action for lack of jurisdiction. *Montgomery Ward & Co. v. Zenith Radio Corp.*, 673 F.2d 1254 (CCPA 1982). After the Supreme Court denied certiorari, 459 U.S. 943, 103 S.Ct. 256, 74 L.Ed.2d 200 (1982), the Court of International Trade dissolved the preliminary injunction. *Zenith Radio Corp. v. United States*, 4 CIT 201 (1982) [Available on WESTLAW–DCT database].

The government then moved for assessment of damages against Zenith's $250,000 bond. The Court of International Trade denied the motion. The court discussed five "equitable factors" that in its view bore upon the propriety of awarding damages. It ruled that Zenith "acted in good faith when it sought injunctive relief," that "[t]he relative resources of the parties ... do not tip the scales strongly in favor of or against assessment of damages," that for the reasons it gave "[t]he court will not consider the factor of mitigation of damages," and that "Zenith's failure to win the underlying suit is not a significant factor in favor of assessment of damages." 643 F.Supp. 1133, 1137–38. The court stated that the "most significant factor in Zenith's favor and the one upon which the court relies in denying assessment of damages, is"

the change in the law that took place after the preliminary injunction was issued and thus deprived Zenith of its day in court. That change was the decision by the court of appeals in *Montgomery Ward & Co. v. Zenith Radio Corp.*, 69 CCPA 96, 673 F.2d 1254, *cert. denied*, 459 U.S. 943, 103 S.Ct. 256, 74 L.Ed.2d 200 (1982). *Montgomery Ward* held that neither of the relevant statutes—28 U.S.C. §§ 1581(c) or (i)—conferred jurisdiction on Zenith's claim of bad faith in

the antidumping settlement. 69 CCPA at 104–11, 673 F.2d at 1260–65. While *Montgomery Ward* did not change the law in the sense that it overruled a prior precedent, it did decide a novel jurisdictional question in a manner contrary to what Zenith legitimately could have expected.

. . . .

Because of the jurisdictional ruling in *Montgomery Ward,* Zenith will never have an opportunity to prove its allegation, which the court has found non-frivolous, that the $77 million settlement was tainted by bad faith. Under all circumstances, however, it would be manifestly unfair to add a rule 65(c) insult to the jurisdictional injury. The $77 million settlement has never been vindicated on the merits. Rather, this court was held to lack jurisdiction to review the merits of the settlement. If Zenith lost the opportunity to be heard on its good faith claim of governmental impropriety, it should not be required to pay damages to the government as well.

*Id.* at 1138.

## II

In requiring the bond, the Court of International Trade acted pursuant to its rule 65(c), the pertinent language of which is identical to Rule 65(c) of the Federal Rules of Civil Procedure. It provides:

> No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. . . .

Since there are no decisions of the Court of International Trade or this court discussing the basis upon which that court is to determine whether to award damages under an injunction bond, we look to the decisions of other circuits dealing with the question under Federal Rule 65(c), as the Court of International Trade did in this case. 643 F.Supp. at 1135 n. 7.

The circuits agree that the district court has some discretion whether or not to award damages on a bond accompanying a preliminary injunction if the injunction is reversed. They are not in agreement, however, over the bases and extent of that discretion. *See, e.g., Coyne-Delany Co. v. Capital Dev. Bd. of the State of Ill.,* 717 F.2d 385, 391–92 (7th Cir.1983).

Some courts view the district court as having broad discretion to deny damages. *See, e.g., H & R Block, Inc. v. McCaslin,* 541 F.2d 1098, 1099 (5th Cir.1976) ("The awarding of damages pursuant to an injunction bond rests in the sound discretion of the court's equity jurisdiction"); *Page Communications Eng'rs, Inc. v. Froehlke,* 475 F.2d 994, 997 (D.C.Cir.1973) ("The court had discretion to refuse to award damages, in the interest of equity and justice"). Other courts—probably the majority—"hold . . . that a prevailing defendant is entitled to damages on the injunction bond unless there is a good reason for not requiring plaintiff to pay in the particular case." *Coyne-Delany,* 717 F.2d at 391. Apparently there is no disagreement, however, that if a district court refuses to award damages, its action is reviewed under the abuse-of-discretion standard. *See, e.g., Coyne-Delany,* 717 F.2d at 392; *State of Kan. ex rel. Stephan v. Adams,* 705 F.2d 1267, 1270 (10th Cir.1983); *Page Communications,* 475 F.2d at 997.

In the present case, the decision of the Court of International Trade to deny damages on the injunction bond reflected the court's evaluation of five "equitable factors." The court deemed four of them to be of little or no significance. The "most significant factor" for the court and the one on which "the court relie[d] in denying assessment of damages," 643 F.Supp. at 1138, was the decision of the Court of Customs and Patent Appeals in *Montgomery Ward v. Zenith, supra.* That decision held that the Court of International Trade had no jurisdiction to entertain Zenith's suit insofar as Zenith charged that the government acted in bad faith in entering into the settlement agreements because Zenith could not "inquire into the merits of the settlement or into the Secre-

tary's mental processes in deciding upon settlement...." 673 F.2d at 1264.

The Court of International Trade referred to the *Montgomery Ward* decision as a "change in the law that took place after the preliminary injunction was issued and thus deprived Zenith of its day in court." It further stated, however: "While Montgomery Ward did not change the law in the sense that it overruled a prior precedent, it did decide a novel jurisdictional question in a manner contrary to what Zenith legitimately could have expected." 643 F.Supp. at 1138 (footnote omitted).

The *Montgomery Ward* decision was not a "change in the law" in the sense that term has been used in other cases that upheld a district court's denial of damages resulting from a preliminary injunction. *E.g., State of Kan. ex rel. Stephan v. Adams*, 705 F.2d at 1269 (new statute); *Coyne-Delany*, 717 F.2d at 393 (intermediate-level state appellate court decision reversed by state supreme court). On the other hand, the decision did announce and apply a limitation upon the jurisdiction of the Court of International Trade that had not theretofore been stated. The result was to preclude Zenith from litigating its contention, which the Court of International Trade "found nonfrivolous, that the $77 million settlement was tainted by bad faith." 643 F.Supp. at 1138.

If we had made the initial decision whether to assess damages on the bond, we might have given the five "equitable factors" different weight than the Court of International Trade gave them. We therefore might have come out the other way. Considering all the circumstances, however, we cannot say the Court of International Trade abused its discretion in reaching the conclusion it did. Accordingly, the court's order denying the government's motion for assessment of damages on the injunction bond is affirmed.

AFFIRMED.